**NESTER'S MAP & GUIDE CORP., Plaintiff,**

v.

**HAGSTROM MAP COMPANY, Defendant.**

**No. 90 CV 1086.**

United States District Court, E.D. New York.

June 30, 1992.

---

Jacobson & Colfin, P.C. (Jefferey E. Jacobson, of counsel), New York City, for plaintiff.

Walter, Conston, Alexander & Green, P.C. (David B. Wolf, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Nester's Map & Guide Corporation (Nester), a New York Corporation, which sells and publishes a New York City taxi driver's guide entitled *Official New York Taxi Driver's Guide* (Nester's guide), brought this copyright infringement action against Hagstrom Map Company, Inc. (Hagstrom),

a Delaware corporation with its principal place of business in New York, which publishes and distributes *New York City Taxi & Limousine Drivers Guide* (Hagstrom's guide).

Nester alleges that Hagstrom violated the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (1977 & Supp.1992), by publishing a taxi guide unlawfully copying copyrighted material in Nester's taxi guide. The complaint also asserts pendent jurisdiction, pursuant to 28 U.S.C. § 1338(b), of three state law claims, based on substantially the same facts, for unfair competition, unfair trade practices, and state trademark infringement.

In its amended answer and counterclaim Hagstrom asserts four affirmative defenses, stating that (1) the complaint fails to state a claim, (2) Nester's guide contains large amounts of unoriginal material not copyrightable and comprising similar material in Hagstrom's guide, (3) the matter in Hagstrom's guide similar or identical to that in Nester's guide constitutes "fair use", and (4) Nester's state law claims are preempted by § 301 of the Copyright Act. Hagstrom also asserts a counterclaim, saying that Nester's use of the word "official" in the title of its taxi guide is false or misleading and prohibited by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and injurious to the goodwill enjoyed by Hagstrom's guide.

Nester seeks (a) a permanent injunction enjoining Hagstrom from selling or otherwise distributing its guide, (b) damages, (c) impoundment of all promotional material and copies of Hagstrom's guide, and (d) costs and attorneys' fees. Hagstrom seeks (a) dismissal of the complaint, (b) preliminary and permanent injunctions enjoining Nester from using the word "official" in its guide, and (c) costs and attorneys' fees.

In a March 19, 1991 Memorandum and Order, familiarity with which is assumed, this court granted summary judgment on Hagstrom's counterclaim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and permanently enjoined Nester from using the word "official" in the title of its guide. *Nester's Map & Guide Corp.*

*v. Hagstrom Map Co.*, 760 F.Supp. 36 (E.D.N.Y.1991).

In their present motions both parties move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Nester moves for summary judgment on the issue of liability for copyright infringement, and Hagstrom moves to dismiss the complaint.

### I.

Nester began publishing and selling its *Official New York Taxi Driver's Guide* in 1978, and has since published seven editions through 1988. The guide contains maps, information on mileage and taxi rates, points of interest such as restaurants, museums, nightclubs and theatres, public services such as hospitals, police precincts, cemeteries, and churches, as well as tables of addresses containing important streets and building numbers. As part of this listing of street and building addresses, Nester includes "obscure and erroneous" listings which do not "substantially affect the accuracy" of its guide but which serve to detect copying by others.

Nester claims that between 1978 and 1988 its guide was the only taxi guide for New York City published in New York. During this time Hagstrom bought many copies of Nester's guide. In 1988 Hagstrom began publishing its own guide, entitled *New York City Taxi & Limousine Drivers Guide*. Hagstrom's guide gives information similar to Nester's, as well as major commercial and residential buildings, various terminals, taxi inspection stations and cash machines, and color maps. For purposes of this motion Hagstrom concedes that material in its street address section consists of material copied from Nester's Guide.

### II.

■ Nester claims that Hagstrom violated its copyright by copying the numbers and sequences of many street and address listings, arguing that researching, selecting, and arranging these listings represent the creative and original work of Nester's president, a Lewis J. Nesterman. Nester

also claims that Hagstrom copied numerous automobile directions and mileage rates for out-of-town fares, basing the fares upon approximate distances slightly and knowingly inaccurate.

Hagstrom says that it copied facts or information "represented as facts", and that these "facts" are not copyrightable. Hagstrom also says that under the doctrine of copyright estoppel Nester's "false facts" are not copyrightable and do not deserve any greater protection than the true facts in Nester's guide.

■ While facts of whatever kind—scientific, historical, biographical, and news of the day—are not copyrightable, 17 U.S.C. § 102(b), factual compilations may be. 17 U.S.C. §§ 102, 103 (1977 & Supp.1992). *Feist Publications, Inc. v. Rural Telephone Service Co.,* — U.S. —, 111 S.Ct. 1282, 1288–89, 113 L.Ed.2d 358 (1991).

■ To be copyrightable such compilations must possess some originality. *Feist* 111 S.Ct. at 1289. Section 103 requires that compilations have three elements in order to qualify as original:

(1) the collection and assembly of preexisting material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an "original" work of authorship.

*Id.* at 1293.

The first element merely describes the nature of a compilation. The street address listings in Nester's guide is an example of such a collection of facts. The third element requires that the compiler use some minimal level of creativity. *See id.* at 1289, 1293; *Key Publications, Inc. v. Chinatown Today Pub. Ent.,* 945 F.2d 509, 512 (2d Cir.1991).

The second requirement is that the compilation exhibit sufficient originality in the "selection, coordination, or arrangement" of the facts to be copyrightable. Although "the originality requirement is not particularly stringent", not every compilation's selection and arrangement of fact will do. *Feist,* 111 S.Ct. at 1294, 1296.

In *Feist,* the Supreme Court held that plaintiff Rural's white pages telephone directory alphabetically listing the name, town, and telephone number of each telephone subscriber lacked "even the slightest trace of creativity" in the presentation and possibly the selection of facts. *Id.* at 1296. In *Key Publications,* the court held that the selection of 9,000 businesses and the arrangement of the business listings into more than 260 categories made the Key directory copyrightable, although the competing directory did not infringe upon the copyright. 945 F.2d at 513.

Nester says that both its selection and arrangement of street address listings and the mileage fares and routes for out-of-town destinations are sufficiently original to be copyrightable.

The street address section in Nester's guide first lists all the major thoroughfares running north-south in Manhattan, the numbered avenues (first through twelve), the named avenues (Park Avenue South, Park, Lexington, Madison, and York Avenues), and then additional named streets or major roads (Broadway, Central Park West, Amsterdam, Columbus, Hudson, Varick, Dyckman, Canal, Christopher St., Nicholas, Lenox, West End, Riverside Drive, and Grand Street). The address listings for the other boroughs follow the same scheme. The selection of these main concourses are obvious for purposes of a taxi guide to New York, and the particular order of the listings is not sufficiently creative to be copyrightable.

Nester says that the originality of the presentation of street addresses consists of the selection of cross streets and the assignment of address numbers for each of these cross streets. Nesterman, the guide's author, stated in his deposition that, because the guide has limited space for listing cross streets, he selected only the important and most helpful cross streets based upon his knowledge of New York. Moreover, many of the numbers assigned to each cross street do not correspond to the actual numbers of the buildings at that intersection. He approximated the vast majority of building numbers in

order both to detect copying and to make them easier to remember. Despite the changes, the listings are sufficiently accurate to enable taxi drivers to find the actual address.

On First Avenue, for example, the interval between cross streets varies from three to five blocks and follows no particular pattern. The intervals for other avenues throughout the city are as low as a single block, but follow no pattern, and the building numbers are only approximately correct.

Nester intimates that since these numbers are invented, they should be copyrightable like other works of fiction. Hagstrom argues, relying upon the doctrine of copyright estoppel, that since Nester represents the numbers as "facts", they are not copyrightable. *Huie v. National Broadcasting Company*, 184 F.Supp. 198, 199–200 (S.D.N.Y.1960); *Houts v. Universal City Studios, Inc.*, 603 F.Supp. 26, 28 (C.D.Cal.1984) ("Under the doctrine of copyright estoppel, once a plaintiff's work has been held out to the public as factual, the author-plaintiff cannot then claim that the book is, in actuality, fiction and thus entitled to the higher protection allowed to fictional works.")

To treat "false" facts interspersed among actual facts and represented as actual facts as fiction would mean that no one could ever reproduce or copy actual facts without risk of reproducing a false fact and thereby violating a copyright. If such were the law, information could never be reproduced or widely disseminated. But even though facts themselves are not copyrightable, the order, selection, and presentation may be copyrighted.

Treating "false facts" as actual facts, Nester's list of numbers in its street address guide may be copyrightable not because the statements are fictional but because of the originality in selecting and assigning them to particular cross streets.

The court holds that Nesterman used sufficient creativity in implementing a plan to locate addresses along major streets to qualify this section of Nester's guide as copyrightable.

Neither the street listings nor the building numbers were produced in a "mechanical or routine" way, as would be the case in a phone directory. *Feist*, 111 S.Ct. at 1296. Nesterman showed creativity by assigning approximate numbers to building addresses at the selected intersections.

### 1. Infringement

In order to succeed in this action Nester must prove not only ownership of a valid copyright but also infringement by Hagstrom of the original elements of the work. *Feist* at 1296, *citing Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985).

As the Second Circuit has held, to infringe copiers of a compilation must copy "the principles guiding that selection" in order to infringe a copyright. *Key Publications*, 945 F.2d at 516. *See also Feist*, at 1289–90. *Compare* 17 U.S.C. § 102(b) (Supp.1992) ("In no case does copyright protection for an original work of authorship extend to any ... concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.")

For purposes of this motion Hagstrom concedes that the similarities between the address listing sections of the guide "consist of material that was copied from Nester's Guide". Def.Br. at 22. Indeed, the address listings in both Nester's and Hagstrom's guides are the same in content and form. All of the major avenues, the cross streets, and the numbers assigned to them in Hagstrom's guide appear in the same order as in Nester's guide. The only significant difference is that Hagstrom's guide copied only a portion of the listings in Nester's guide.

Hagstrom says that it did not infringe the street address section because its Manhattan street address section does not "exactly duplicate a substantial portion of" Nester's guide. *Citing Key Publications*, 945 F.2d at 517. Hagstrom urges that because it copied less than 50% of Nester's

addresses that is not enough to constitute infringement.

Nester's guide contains 920 addresses, while Hagstrom's has 422. Moreover, the cross streets in Hagstrom's guide appear in intervals of more than five streets, compared to every three or four streets in Nester's. Each of the guides contain five avenues or streets not found in the other guide.

Nearly all of what Hagstrom published in its street address section was copied from Nester's guide.

> The court in *Key Publications* said that [i]f the [copying] Directory had exactly duplicated a substantial designated portion of the [copied] Directory—for example, all its listings of professionals such as medical doctors, lawyers, accountants ..., an infringement would succeed. However, there is no claim that such duplication occurred here.

945 F.2d at 517.

Read in isolation, this passage suggests that the amount of copying was critical to a finding of infringement. But the court in that case repeatedly identified the "principles guiding selection" of a copied compilation, not the amount of copying, as the critical factor. *Id.* at 516.

As an example the court cited *Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir. 1984), in which the Galore Directory copied 5,000 baseball card listings from a total of 18,000 contained in the Key Directory. The court held that for purposes of copyright infringement it did not matter that Galore copied less than a third of Key's listings. "The copyrighted guide selected within the [list of] 18,000 [baseball cards] a designated group of 5000 that it described as 'premium' cards. The infringing guide then copied that portion wholesale based upon the same principle of selection." *Id.* at 516.

*Key Publications* does not stand for the proposition that copying copyrighted material is proper so long as the copying, though significant, is done in moderation. *See Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936) (L.

Hand, J.) ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate"). Nor can a plagiarist excuse the wrong by showing how much of the copied work he did not pirate. *Cf. Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 242 (2d Cir. 1983) (*de minimis* rule allows "literal copying of a small and usually insignificant portion of the plaintiff's work").

Hagstrom copied Nester's list of the cross streets determined by Nesterman to be the most prominent and useful to a cab driver. Hagstrom's list, though shorter, was entirely based upon Nesterman's selection, and Hagstrom copied Nesterman's choices as to address numbers and their application to particular cross streets.

The combination of cross streets with assigned numbers represents a creative selection, adaptation, and arrangement of facts based upon Nesterman's knowledge of New York and his judgment as to a taxi driver's needs. Hagstrom infringed Nester's copyright by copying this combination.

### 2. *Mileage rate guide*

■ As noted above, Nester's guide contains a mileage rate guide for out-of-town destinations, and Nester claims this is copyrightable and was copied.

In order to compute the mileage to certain destinations outside of New York, Nesterman measured the distances using a ruler and the mileage key on a map, thus approximating the actual distance from 59th Street and Columbus Circle to another city or town. Nesterman also selected particular towns or cities as destinations based upon his own judgment and experience.

Nesterman used a rate of $2.50 per mile to calculate the total fare and also listed the fares to these destinations from LaGuardia, Kennedy, and Newark Airports. Without saying so explicitly, the rates from the airports to the out-of-town destinations were calculated by adding $25, $30, and $40 respectively to the rates listed from Columbus Circle to the same destinations. Nesterman also provided directions from New

York to these destinations using, in his words, "the most popular routes".

Nesterman's selection of particular destinations based upon his knowledge and judgment as to their usefulness to a cab driver are copyrightable. But calculations of particular distances between New York and these destinations are not copyrightable. Such distances are facts which derive from the destinations. The fact that the distances are not precise by the standards of a topographical survey is of no consequence. Nesterman did not assign numbers to the distances based upon some scheme or design. He used no "principle of selection". He ascertained the numbers listed for distance and the resulting mileage rates by eye-balling a map.

In any event, Hagstrom did not infringe this part of Nester's guide.

Hagstrom admittedly referred to Nester's guide in composing its list of out-of-town destinations. But Nesterman's selection was not copied. For example, in its first few pages alone, Hagstrom's guide includes numerous towns in New York not in Nester's guide. In addition, Hagstrom's guide lists destinations in Pennsylvania; Nester's does not. Nester's guide lists the counties in which the cities or towns are located; Hagstrom's does not.

Nor did Hagstrom copy the distances. While some of the distances listed are the same, many are not. Moreover, while Hagstrom used $2.40 per mile to calculate fares, Nester used $2.50. To determine the rates from LaGuardia and Kennedy Airport to the out-of-town destinations, Hagstrom's guide directed cab drivers to add $15 and $25 respectively to the total charge. Nester's guide added $25 for LaGuardia, $30 for Kennedy, and $40 for Newark Airports. Since the distances listed in the two guides are often different and the rates are always different, the cost for each destination is also always different.

The dissimilarity between the two guides extends to a number of the suggested routes from New York to out-of-town destinations. For example, Hagstrom's guide suggests the route to Bedford as "Hutchin-son Rtes. 684–22"; Nester's guide suggests "Saw Mill River PKWY To Exit 42".

Even when the two guides suggest similar routes, they are by Nesterman's own admission the most popular, and almost always the most direct. All are readily obtainable from a map.

Hagstrom presented evidence clearly indicating its own methods for developing information. Specifically, Hagstrom used mileage indices contained in Hagstrom maps of New Jersey, Upper and Lower Westchester Counties, Long Island, and a fifty mile radius map. These indices gave approximate distances from Columbus Circle in Manhattan to out-of-town destinations. In a few instances, Hagstrom used a ruler and the mileage keys at the bottom of the maps, or relied upon personal knowledge of the distances.

Whatever the method Hagstrom used, most of the facts contained in its guide differ from those in Nester's. The selection and arrangement of facts are also quite different. Hagstrom did not infringe this section of Nester's guide.

### III. THE STATE LAW CLAIMS

Hagstrom's motion to dismiss Nester's state law claims is based both on Section 301 of the Copyright Act and on their alleged lack of merit.

Section 301 states, in pertinent part:
[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as [provided in the Copyright Act] are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301.

■ As stated above, Nester's guide is a compilation coming within the terms of that act. Hagstrom says that Nester's state law claims are "equivalent" to the exclusive rights granted by the Copyright Act.

All three of Nester's state law claims stem from Hagstrom's alleged copying and

relate to the same set of facts as the copyright infringement claim. But all of those claims involve an additional legal element, namely, confusion on the part of the purchasing public.

Nester also makes state law claims for unfair competition and unfair trade practices. The allegations are that Hagstrom has misrepresented to the public that it owns Nester's guide, and has sold an imitation of Nester's guide with a "virtually indistinguishable" title, thereby confusing people into buying Hagstrom's guide.

Nester's claim for state trademark infringement alleges that Hagstrom "wrongfully, maliciously and wantonly" infringed upon Nester's copyright and trademark in Nester's guide by publishing a taxi guide with a similar title "designed and produced to deceive the public into believing [Hagstrom's guide] to be the product of the plaintiff".

The substance of each state law claim is not simply that Hagstrom copied parts of Nester's guide, but that Hagstrom misled the public into buying Hagstrom's guide instead of Nester's. As alleged by Nester, the public's confusion did not result solely from Hagstrom's copying of copyrightable material.

Hagstrom allegedly misled the public by misrepresenting its ownership of Nester's guide, unfairly imitating that guide, and using a title similar to that of Nester's guide. Each of these acts would be "qualitatively different conduct" from the simple copying of sections of Nester's guide. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

Because all the state law claims assert an extra element "which changes the nature of the action" to make it "qualitatively different from the copyright infringement claim", they are not preempted by the Copyright Act. *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985).

■ The court thus turns to the merits of those claims. Each requires proof of a likelihood of confusion.

[I]n an action for New York State law trade-mark infringement ... it is necessary to show that the defendant's use of the trade-mark is likely to cause confusion, mistake or to deceive; actual confusion need not be shown. Similarly, it has been held that in an action for unfair competition a showing of a likelihood of confusion, rather than actual confusion, is all that is required to state a cause of action.

*Allied Maintenance v. Allied Mechanical*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 631, 369 N.E.2d 1162, 1165 (1977); *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624 (2d Cir.1983) (same). *See also A.J. Sandy, Inc. v. Junior City, Inc.*, 17 A.D.2d 407, 234 N.Y.S.2d 508, 512 (1st Dept.1962).

Though likelihood of confusion is frequently a fairly disputed issue of fact, "[t]he issue is amenable to summary judgment", and "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion...." *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir.1983) (discussing likelihood of confusion for purposes of a claim under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)).

In that case the Court of Appeals for the Second Circuit held that "a visual comparison" of the two works established "as a matter of law a lack of substantial similarity that would create a likelihood of confusion". *Id.* The court so held although the plaintiff offered survey evidence to suggest that some viewers of the television audience believed that a television character was based on a popular comic strip character. Here there is no such survey evidence in the record.

A visual comparison of the two guides shows that as a matter of law, there is no likelihood of confusing one with the other.

Nothing in Hagstrom's guide suggests that it competed unfairly or palmed its

guide off as that of Nester. The two guides contain many significant differences in appearance.

Hagstrom's guide lists the name "hagstrom" in the upper right corner in large print, the "h" formed by the intersection of what appears to be two roads. Below the word "hagstrom" is a bright red triangle with the word "New!". Nester's guide says "Nester's" in small, italicized and stylized script in the upper left corner. Nothing on the cover or inside of Hagstrom's guide suggests that it is somehow associated with Nester's guide, or that it owns or appropriated Nester's guide.

The overall appearance of the guides makes clear that they are unrelated. Nester's guide has a camp, 1940s look, with a drawing of cars of that era racing along a gold road against a solid blue background. The guide is bound by glue. Inside, the maps are black and white, as are cartoon drawings of streets scenes from the early part of the century.

Hagstrom's guide is bound by wire for easy opening. The cover features a photograph of a street scene taken from above. A group of taxis appear prominently below an American flag. The picture, along with writing, is set against a yellow background. Inside are color maps and no drawings.

There is no likelihood of confusion.

There is no merit to Nester's contention that the title of Hagstrom guide infringed Nester's copyright and trademark. Nester's guide is entitled, "Official New York Taxi Driver's Guide"; Hagstrom's is entitled, "New York City Taxi & Limousine Drivers Guide". As noted above, this court found that Nester's use of the term "Official" violated section 43(a) of the Lanham Act and permanently enjoined Nester from including it in its title.

Absent the word "official", the two titles are similar, but not confusing. Hagstrom's title includes the word "City" and " & Limousine"; Nester's does not. Nester's guide makes the word "driver's" possessive and singular, Hagstrom makes the word plural and nominative. The appearance of the titles in the two guides also differ markedly. Nester's guide is comprised of block letters occupying much of the cover, with the words "New York" in large yellow script and the rest of the title words, and the title-sized word "Maps", printed in red. Hagstrom's guide has green lettering occupying a quarter of the page. "New York City" is smaller than the rest of the title, the opposite of Nester's.

## IV.

The court permanently enjoins Hagstrom from infringing upon Nester's copyright by copying the street address section of Nester's guide. Otherwise, Nester's motion is denied. Hagstrom's motion is granted to the extent of dismissing the state law claims and is otherwise denied.

So ordered.