**COMPAQ COMPUTER CORPORATION,**
**Plaintiff,**

v.

**ERGONOME INCORPORATED, Stephanie L. Brown, and Thomas Mowrey, Defendants.**

No. CIV. A. H–97–1026.

United States District Court,
S.D. Texas.
Houston Division.

March 27, 2001.

Michael O Sutton, Locke Liddell et al, Houston, TX, for Compaq Computer Corporation, plaintiffs.

Arnold Anderson Vickery, Vickery & Waldner, Paul F Waldner, III, Vickery & Waldner, Kent Arlan Rowald, Bracewell & Patterson, Houston, TX, Martin R Gold, Rubinbaum et al, New York, NY, Charles K Kebodeaux, Provost & Umphrey, Beaumont, TX, for Ergonome Inc, Stephanie L Brown, defendants.

### *MEMORANDUM OPINION AND ORDER*

HARMON, District Judge.

Pending before the Court is Plaintiff Compaq Computer Corporation's Motion for Partial Summary Judgment With Respect to the Photographs at Issue (Inst. No. 177), Plaintiff's Motion for Partial Summary Judgment With Respect to the Words at Issue (Inst. No. 178); and Defendant Ergonome Incorporated's Cross–Motion for Summary Judgment (Inst. No. 192). After reviewing the record and the applicable law, the Court concludes that Plaintiff's partial summary judgment motion regarding the photographs should be **DENIED,** that Plaintiff's partial summary judgment regarding the words should be **DENIED,** and that Defendant's cross-mo-

tion for summary judgment should be **DE-NIED.**

## I. BACKGROUND

The present action for declaratory judgment, arising under the Copyright Act, 17 U.S.C. § 101 *et seq.,* revolves around five books, three produced by Plaintiff Compaq Computer Corporation ("Compaq") and two produced by Defendants Ergonome Incorporated, Stephanie L. Brown, and Thomas Mowrey (referred to collectively as "Ergonome"). Ergonome's first work, *The HAND Book,* was published in 1993, and its software version, *KeyMoves,* was published in 1995. Both these books were marketed to the general public. Meanwhile, Compaq published its first work, *Compaq's Safety and Comfort Guide,* in 1994; it published the electronic version of the *Safety and Comfort Guide* in 1995; and it published a substantially updated version of the *Safety and Comfort Guide* in 1997. The three iterations of the *Safety and Comfort Guide* (referred to collectively as *"Guides")* were included with other materials usually provided to purchasers of Compaq's computers. All five works relevant to this case were similar in that they all informed computer users about ergonomics related to computer use, and about how to maintain comfortable and healthy postures while working in front of computers. The crucial question at the heart of this litigation is whether Compaq, in its three *Guides,* infringed the copyrighted material in Ergonome's *The HAND Book* and *KeyMoves.*

The origins of this case reach back almost ten years. Stephanie Brown ("Brown") was a concert pianist who, in the latter half of 1992, began writing a book on preventing repetitive stress injuries, such as carpel tunnel syndrome, with

respect to computer keyboard use. Brown registered this book with the Copyright Office at various stages of its creation during 1992 and 1993. In September 1993, Brown formed Ergonome for the purpose of publishing and marketing *The HAND Book.* As part of the formation of Ergonome, Brown assigned all right, title, and interest in *The HAND Book,* including the copyrights associated with it, to Ergonome.[1] Ergonome states that at all times it complied in all respects with the Copyright Act, 17 U.S.C. § 504, and all other laws governing copyright.

During roughly the same time period, Compaq was seeking to replace its 1991 booklet titled *Creating a Comfortable Work Environment,* which had addressed many of the same ergonomics issues presented in Ergonome's *The HAND Book,* because Compaq desired to provide its end users with greater information on avoiding keyboard-related injuries. As part of this effort to create a new booklet, Compaq obtained many reference materials bearing on hand injuries and computer use. One of the reference materials was *The HAND Book* from Ergonome. Shortly thereafter, Compaq, through the manager of its Human Factors group, Cynthia Purvis, requested a license from Ergonome that would allow Compaq to "bundle" (*i.e.,* supply) a copy of *The HAND Book* with every Compaq computer sold. No licensing agreement was eventually entered, however. Rather, unknown to Ergonome, Compaq developed the 1994 *Guide* throughout the time of Ergonome and Compaq's negotiations, a booklet which covered essentially the same subject matter as *The HAND Book.*

During Compaq and Ergonome's talks regarding *The HAND Book,* the two companies also discussed the possible bundling

---

1. All subsequent filings with the Copyright Office for *The HAND Book* and *KeyMoves* list Ergonome as the Copyright Claimant.

of Ergonome's *KeyMoves,* a complementary software product to *The HAND Book.* Ergonome states that it was at a meeting to discuss a possible licensing of *KeyMoves* that Ergonome first became aware of the existence of Compaq's 1994 *Guide.* Ergonome further states that, although it immediately recognized the infringing nature of the 1994 *Guide,* it did not raise the issue because it was still interested in pursuing the licensing of *KeyMoves* to Compaq.

When it became clear that no deal on either *The HAND Book* or *KeyMoves* would materialize, the specter of litigation loomed between Ergonome against Compaq. As a result, Compaq filed the instant action on March 28, 1997 in this Court, seeking a declaration that its 1994 *Guide* (and its 1995 electronic version) does not, as a matter of law, infringe on Ergonome's *HAND Book* or *KeyMoves.* Meanwhile, Ergonome brought suit against Compaq for infringement in the Southern District of New York, which subsequently transferred the infringement action to this Court. Recognizing that the same issues of law and fact permeated through both causes of action, the Court consolidated both cases by Order dated August 22, 2000.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant. *Latimer v. Smithkline & French Lab.,* 919

F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, however, the movant for summary judgment need not support the motion with evidence negating the opponent's case. Instead, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir.1994)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

## III. DISCUSSION

It is axiomatic that any claim of copyright infringement depends on two primary elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*

*Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 548, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)); *Peel & Co., Inc. v. Rug Market,* 238 F.3d 391, 394 (5th Cir.2001) (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 790 (5th Cir.1999)). For the purposes of the present motions for partial summary judgment, Compaq does not contest Ergonome's ownership of a valid copyright or Compaq's copying. Rather, Compaq argues that the words and pictures at issue in this case are uncopyrightable, or, if they are copyrightable, Compaq did not commit any unlawful infringement.

The Court addresses the copyrightability issue first. Compaq takes the position that the textual material at issue in *The HAND Book* and *KeyMoves* comprise uncopyrightable words, fragments, and short phrases that are dictated "solely by functional considerations." (Mem. in Support of Mots. for Partial Summ. J. at 11.) Compaq thus essentially argues that Ergonome's expression is not original enough to warrant copyright protection because it consists of "straightforward terms" where "the available variations in wording are quite limited." *Matthews v. Freedman,* 157 F.3d 25, 28 (1st Cir.1998). Relatedly, Compaq also invokes the doctrines of merger and *scenes a faire* and contends that Ergonome's expression "is so intimately linked with an idea that to grant protection to the expression is equivalent to giving a monopoly on the idea itself." (Mem. in Support of Mots. for Partial Summ J. at 16.)

In response, Ergonome files its own partial summary judgment motion and, unsurprisingly, insists that words and pictures are indeed copyrightable. First, Ergonome calls attention to its ownership of U.S. copyright registrations in *The HAND Book* and the *KeyMoves* software,

pointing out that such ownership gives rise to a presumption of copyrightability. *See Fonar v. Domenick,* 105 F.3d 99, 104 (2nd Cir.1997) (holding that ownership of a copyright registration gives rise to a rebuttable presumption that the work in question is copyrightable); *see also* 17 U.S.C. § 410(c) ("A certificate of copyright registration is *prima facie* evidence that the copyright is valid."). Second, Ergonome's criticizes Compaq's very framework of analysis: while Compaq "dismembers" Ergonome's expressions into component words and phrases, Ergonome maintains that it is the very arrangement and selection of the words and pictures as a coherent whole that gives rise to copyright protection. (Opp. To Mots. for Partial Summ. J. and Cross–Mot. for Partial Summ. J. at 6.) In other words, while Compaq focuses on "the sum of the parts" in *The HAND Book* and *KeyMoves,* Ergonome argues that the more correct inquiry focuses on "the whole" of the expression.

The Court finds that Ergonome takes the better view, for a proper analysis of copyrightability centers on the overall organization and form of Ergonome's words and depictions rather than on their component parts. That Ergonome owns copyright registrations in *The HAND Book* and *KeyMoves* is of no moment in this case, because it is well established that "the mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist,* 499 U.S. at 348, 111 S.Ct. 1282; *Kepner–Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 533 (5th Cir.1994) (holding that a plaintiff's holding of a copyright over materials "does not mean that all aspects of those materials are automatically protected").

■ Instead, the true touchstone of copyrightability is originality. *Kamar Intern., Inc. v. Russ Berrie and Co.,* 657 F.2d 1059, 1061 (9th Cir.1981) ("Originality

is the indispensable prerequisite for copyrightability."). The originality inquiry centers not on the inherent originality of a work's ideas, however, because no idea is copyrightable. *See Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) ("[A] copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself."). Rather, the inquiry focuses on the manner in which the ideas are expressed, which often depends on how the component parts of the expression are arranged and are related to one another, *see Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) (holding that copyrightability often depends on "text, arrangement of text, art work, and association between art work and text ... as a whole"). As the Supreme Court explained in *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, "Common sense tells use that 100 uncopyrightable facts do not magically change their status when gathered together in one place. Yet copyright law seems to contemplate that compilations that consist exclusively of facts are potentially within its scope." *Id.* at 345, 111 S.Ct. 1282. In other words, arrangements of uncopyrightable ingredients may indeed be copyrightable. The key is whether the overall form of the expression is original, for "if the selection and arrangement are original, these elements of the work are eligible for copyright protection." *Feist*, 499 U.S. at 349, 111 S.Ct. 1282.

The bar for "originality" in a copyrightability analysis is not high. As the *Feist* Court explained:

Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.

*Id.* at 345, 111 S.Ct. 1282 (citations omitted). Thus, if an author's particular expression of an idea clears the relatively low hurdle of originality, his work his copyrightable.

Compaq, however, urges the Court to disregard the *Feist* principle of "selection and arrangement" because the disputed work in *The HAND Book* and *KeyMoves* does not constitute a "compilation" *per se*. Title 17 U.S.C. § 101 defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. It is undisputed that *The HAND Book* and *KeyMoves* were not officially registered as compilations, but rather, as original works. However, the Court rejects Compaq's rigid and binary conception of copyright law where copyright jurisprudence involving compilations is different than that of cases involving original works. It is a distinction that lacks a real principled difference.[2]

---

**2.** While Compaq endorses the abstraction-filtration-comparison method often used in cases involving computer programs, *see, e.g., Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1342 (5th Cir.1994), the Court fails to see the tension that Compaq implies between such a method and the "selection and arrangement" analysis, especially when the abstraction-filtration-comparison method is more relevant to the issue of infringement than to copyrightability. *See* 3 NIMMER, § 13.03[F] at 13–102.17 (stating that the purpose of abstracting a work into successive levels of generality is to "help a court separate ideas [and processes] from expres-

*Cf., e.g., Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1346 (5th Cir.1994) (applying *Feist* to a non-compilation infringement case involving a computer software program and finding that the plaintiff had "selected data and arranged their placement in a way that is unique and original"); *Lotus Dev. Corp. v. Borland Int'l Inc.,* 831 F.Supp. 223, 231 (D.Mass.1993) (finding a command menu interface copyrightable by comparing it to a compilation).

■ The postulate for which a "compilation case" like *Feist* stands is rather simple: a work comprising uncopyrightable elements may, through original organization and presentation, be protected by copyright law. This idea-expression dichotomy flows throughout copyright jurisprudence, and, indeed, is the very essence of it. *See, e.g., Matthews v. Freedman,* 157 F.3d 25, 27 (1st Cir.1998) (recognizing that the dynamic between uncopyrightable ideas and copyrightable expression of those ideas represents the major tension in copyright law); *Georgia Lee Miller Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 939 (7th Cir.1989) ("While it is true that these elements are not individually capable of protection, just as individual words do not deserve copyright protection, it is the unique combination of these common elements which form the copyrighted material."); *Emerson v. Davies,* 8 F.Cas. 615, 619 (Circuit Court, D. Mass., 1845) ("He, who constructs by a new plan, and arrangement, and combination of old materials, in a book designed for instruction, either of the young, or the old, as a title to a copy-

right, which cannot be displaced by showing that some part of his plan, or arrangement or combination, has been used before ...."). Compaq's distinction of "compilation cases" versus "original work cases" is therefore beside the point. Moreover, the Court notes that, in its Memorandum in Opposition to Ergonome's Cross–Motion for Partial Summary Judgment, Compaq asserts that "[b]oth the words and pictures of *The HAND Book* are factual" and consist only of uncopyrightable "facts." (Mem. In Opp. To Cross–Mot. for Partial Summ. J. at 17, 20.) In light of such an argument, the Court cannot help but find cases like *Feist* instructive: if the "only conceivable expression is the manner in which the compiler has selected and arranged the [uncopyrightable] facts[, and] the selection and arrangement are original, these elements of the work are eligible for copyright protection." *Feist,* 499 U.S. at 349, 111 S.Ct. 1282.

The Court also rejects Compaq's recurring argument that *The HAND Book* and *KeyMoves*'s words and phrases are so short and fragmentary that copyright protection cannot exist a matter of law. Compaq inappropriately fixates on the number of letters in the words found in *The HAND Book* and *KeyMoves,* and even goes so far as to point out that "only about twenty-five even remotely ... substantive" words appear in the work at issue. (Mem. in Support of Mots. for Partial Summ. J. at 12 n. 8.) Merely because words such as "minimum," "optimum," "natural," "line," and the like are, in of themselves, uncopy-

sion and eliminate from *the substantial similarity analysis* those portions of the work that are not eligible for copyright protection" (emphasis added)). Moreover, the Court finds that Ergonome's work, even when analyzed under the abstraction method, is copyrightable. While the purpose or idea found in *The HAND Book* and *KeyMoves* is certainly not copyrightable, the particular formatting, ar-

rangement, and selection of the words expressing the idea are. In other words, the Court counts Ergonome's words as expressions of ideas, not the ideas themselves. *See id.* at 1345 (using the abstraction analysis and concluding that the computer formats at issue convey an expression, rather than merely an idea).

rightable, it does not necessarily follow that a particular arrangement of those words to express an idea in a particular manner is uncopyrightable. *See Roulo*, 886 F.2d at 939 (holding that, although "individual words do not deserve copyright protection, it is the unique combination of these common elements which form the copyrighted material"). Atomistic parsing is inappropriate in this copyright inquiry; copyrightability of text turns not on the number of letters in its component words, or on the words themselves (for no common word may be copyrighted, *see id.*), but rather, on whether the relationship of the words evinces a modicum of creativity by the author. As explained in *Ornelas v. J. Racenstein & Co., Inc.*, No. 00 CIV. 01511(JSM), 2001 WL 91628 (S.D.N.Y. Feb.2, 2001),

> A review of the relevant case law demonstrates ... that simply because a name, title or slogan is short does not necessarily render it outside the realm of copyright. Rather, the governing principle of law embodied by the Copyright Office regulation is that short words and phrases *tend* to be too trivial or insignificant to exhibit the minimal level of creativity necessary to warrant copyright protection.
>
> . . . .
>
> Thus, the relevant question for the court is not merely whether a name, title or slogan contains some minimal number of words. Rather it is whether the *phrase* contains some appreciable level of creativity, however few words it may contain.

*Id.* at *1 (emphasis added). Accordingly, "not all short, declarative sentences fall" within the Federal Code's exception to copyright protection. *CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc.*, 97 F.3d 1504, 1520 n. 20 (citing *Applied Innovations v. Regents of the Univ. of Minn.*, 876 F.2d 626, 635 (8th Cir.1989)).

▬ In the instant case, the crucial question then becomes obvious: does the particular selection of words and images in Ergonome's work evince the requisite originality to afford it copyright protection? The Court finds that it does.[3] In *The HAND Book*, Ergonome writes:

> 95. Nonetheless, Judge Keeton concluded that the question was one for the court because
>
>> [a] determination that issues of copyrightability are to be resolved by juries would have such severe adverse effects on the aim of assuring that like cases are treated alike and on the complexity and cost of litigation in computer software copyright cases that in practical effect the scope of copyright protection congress manifestly intended could not be achieved. The practical certainty of many outcomes inconsistent with the congressional accommodation among highly valued but conflicting interests, manifested in the Copyright Act, weighs heavily in favor of the conclusion that treating copyrightability issues as exclusively for courts, not juries . . . .
>
> *Id.* at 96. This Court agrees ·and decides the question of copyrightability in the instant case.

3. Courts have disagreed on whether copyrightability is a question of law to be decided by a judge or a question of fact to be decided by a jury, *American Dental Assoc. v. Delta Dental Plans Assoc.*, No. 92 C 5909, 1996 WL 224494, at *17 (N.D.Ill.1996), *rev'd on other grounds*, 126 F.3d 977; the Fifth Circuit, however, has not enunciated a rule on the matter to guide this Court. Indeed, it is a difficult and nuanced issue. *Cf. id.* (stating that, in the Seventh Circuit, "the treatment has been inconsistent"). The Court agrees with the Seventh Circuit that "[t]he truth ... is somewhere in between." *Id.* In *Lotus Dev. Corp. v. Borland Intern., Inc.*, 788 F.Supp. 78 (D.Mass. 1992), Judge Keeton astutely observed that "The legal test for determining copyrightability ... is a standard requiring an evaluative mixed law-fact determination, as distinguished from a bright-line rule calling for a finding about disputed historical facts, such as who did what, where, and when." *Id.* at

1. "The optimum height is one where your forearms are approximately level and parallel to the floor, with little or no bend in your wrists." (Page 17)

2. "Your elbows may or may not be touching your sides lightly, depending on your physique." (Page 22)

3. "Find the minimum amount of weight you need to push down a key and don't use more." (Page 37)

4. "Angled-wrist position—No" and "The Natural Line—Yes" (Page 14, captions to Illustrations 6 and 7)

Ergonome additionally repeatedly uses the phrases "motions or positions" and "positions and motions" (appearing on pages 2, 3, and 5), as well as its sentence, "Don't angle your wrist from side to side, cutting it off from your arm" (page 55).

With regard to the two sets of illustrations in controversy, Ergonome's *The HAND Book* includes depictions of correct and incorrect hand positions relating to a computer keyboard. The first set of illustrations, depicted in detailed photograph form, show an above-view of hands at incorrect and correct angle positions over a keyboard, and the second set of illustrations depict a profile view of hands over a keyboard. A rectangular border surrounds the two juxtaposed photographs in each set, with Ergonome's short directives appearing below as captions.

In addition, Ergonome writes in *Key-Moves:*

1. "Don't angle your wrists. This is uncomfortable and unnatural, and can strain your wrists."

2. "Don't angle your wrist when using your mouse."

3. "Don't point your finger stiffly when using your pointing device, and don't angle your wrist."

Although there is no question that Ergonome cannot copyright the ideas represented in the disputed work, *see Matthews,* 157 F.3d at 27, the Court finds that Ergonome has copyrighted the form of expression in which those ideas manifest. As discussed above, the touchstone for copyright is originality, and in this case, the Court holds that the seven phrases and four illustrations at issue evince the modicum of originality necessary for copyrightability. *See Feist,* 499 U.S. at 349, 111 S.Ct. 1282 ("[I]f the selection and arrangement are original, these elements of the work are eligible for copyright protection."); *Roth Greeting Cards,* 429 F.2d at 1109 (holding that, although the textual components of a greeting card were not copyrightable, "proper analysis of the problem requires that all elements of each card, including text, arrangement of text, art work, and association between art work and text, be considered as a whole"). For example, page 14 of *The HAND Book* expresses the idea that ulnar deviation of the arm during computer use is unhealthy and should be avoided, and that a neutral wrist position is more advantageous. Ergonome has expressed this idea in two clipped and simple directives, "Angled wrist position—no" and "The natural line—yes." On page 22 of *The HAND Book,* Ergonome cautions that, "Your elbows may or may not be touching your sides lightly, depending on your physique" to express the proper position a computer user's arms should have relative to his body. The fact that some of the words at issue accompany illustrations counsels even more in favor of copyrightability, for the arrangement of words in relation to each other and to the pictures goes to the originality of Ergonome's work. *See Roth,* 429 F.2d at 1109 (emphasizing the relationship between text and artwork). Moreover, several aspects of the illustrations, including the rectangular box that surrounds the depictions and the close, vertical juxtaposition of the photographs, fur-

ther demonstrate the necessary creativity. Given that "the requisite level of creativity is extremely low," the Court finds Ergonome's expressions in *The HAND Book* and *KeyMoves* to be copyrightable because "they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist*, 499 U.S. at 345, 111 S.Ct. 1282 (citations omitted).

By way of contrast, the Supreme Court in *Feist* opined that a telephone company's residential white pages was not copyrightable because the arrangement of names and telephone numbers by alphabetical order did not display the requisite originality. As the Court in that case observed, such an arrangement was "entirely typical" and "devoid of even the slightest trace of creativity." *Feist*, 499 U.S. at 362, 111 S.Ct. 1282. Sorting names by alphabet, the Court opined, "is an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Id.* at 363, 111 S.Ct. 1282. "It is not only unoriginal, it is practically inevitable." *Id.* In the instant case, this Court finds that Ergonome's specific expression is not so typical, expected, or inevitable to preclude copyrightability. Rather, the seven phrases and four illustrations at issue in *The HAND Book* and *KeyMoves* show originality sufficient for copyright protection.

▄▄▄ The Court necessarily also rejects Compaq's merger and *scenes a faire* arguments. Under the related doctrines of merger and *scenes a faire*, copyright protection does not extend to expression that is so intimately linked with an idea that to grant protection to the expression is equivalent to giving a monopoly on the idea itself. *See Kepner–Tregoe*, 12 F.3d at 533 ("[W]hen an idea can be expressed in very few ways, copyright law does not protect that expression, because doing so would confer a *de facto* monopoly over the idea. In such cases, idea and expression

are said to be merged."); *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678–79 (1st Cir.1967) (appreciating that, "by copying a mere handful of forms, a party could exhaust all possibilities of future use of the substance [of the idea]"). For merger and *scenes a faire* to 'apply, it is not necessary that there be only one single way of expressing an idea; rather, it is sufficient that the varieties of expression are limited. *See Morrissey*, 379 F.2d at 678; *see also, e.g., Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1557 n. 20 (11th Cir.1996). While Compaq insists that there are only a limited number of ways to convey "forearms," "level," "parallel to the floor," "elbows," "minimum amount," and the like, such an argument revisits Compaq's claim that Ergonome has attempted to copyright certain, specific words. Again, this is not the proper frame of analysis because it focuses on the individual words rather than on the overall expression comprising those words. The question is more appropriately: are there only a limited number of ways to express, for example, the idea that "ulnar deviation of the arm during computer use is unhealthy and should be avoided, and that a neutral wrist position is more advantageous"? The Court finds that Ergonome's particular expression of this idea, manifested as simple, clipped directives ("the natural line—yes" and "the angled line—no") accompanying specific, detailed illustrations, displays enough originality to separate it from mere generic expression.

Indeed, the record indicates this to be so. In its Opposition to Motions for Partial Summary Judgment, Ergonome points out the various ways in which other computer companies and authors have expressed the ideas in controversy here. For example, in IBM Corporation's *A Critical Literature Review of Human Factors Studies of Split Keyboards, 1926–1993*, IBM employs basic pictographs and

speaks in terms of "neutral wrist position" and "ulnar deviation." In Hewlett–Packard Company's *Working in Comfort with Your HP Computer Equipment,* Hewlett–Packard cautions "that you should not bend your wrists more than 10 degrees up or down, or more than 10 degrees sideways." In *Keyboard Price Reductions Overshadow New Designs,* CTDNews simply provides rudimentary shapes to express correct arm and wrist positioning, without using any words at all. LRP Publications, meanwhile, cautions its readers not to "do the twist" with their wrists. While all these books and manuals express the same essential idea, the form or expression in which that idea manifests differs widely, tangibly demonstrating that Ergonome's particular expression is not so generic that it is merged with the ideas represented.

■ Having determined that copyrightability exists in this case, the Court now considers the second issue raised by Compaq in its motions for partial summary judgment: whether there was infringement on Ergonome's copyright. Compaq specifically argues that no unlawful infringement exists here because any copying on its part, assuming such copying exists, was *de minimis* and within the bounds of fair use. With regard to Compaq's *de minimis* argument, the Second Circuit has explained that the concept of *de minimis* has three significant aspects:

First, *de minimis* in the copyright context can mean what it means in most legal contexts: a technical violation of a right so trivial that the law will not impose legal consequences .... In *Knickerbocker Toy Co. v. Azrak–Hamway Int'l, Inc.,* 668 F.2d 699, 703 (2nd Cir.1982), we relied on the *de minimis* doctrine to reject a toy manufacturer's claim based on a photograph of its product in an office copy of a display card of a competitor's product where the display card was never used ....

Second, *de minimis* can mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying....

Third, *de minimis* might be considered relevant to the defense of fair use. One of the statutory factors to be assessed in making the fair use determination is "the amount and substantiality of the portion used in relation to the copyrighted works as a whole," 17 U.S.C. § 107(3). A defendant might contend ... that the portion used was minimal and the use was so brief and indistinct as to tip the third fair use factor decisively against the plaintiff.

*Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 74–75 (2nd Cir. 1997) (citations omitted). In this case, Compaq invokes the second aspect of the *de minimis* doctrine and argues that the 1994, 1995, and 1997 versions of its *Guide* do not cross the "substantial similarity" threshold for actionable copying. As Compaq states, *"The HAND Book* includes thousands of words. Ergonome claims similarities in Compaq's *Guides* to only about forty to fifty words, of which many are simply pronouns. Out of eighty-eight photographs, Ergonome claims similarity in only four ...." (Mem. in Support of Mots. for Partial Summ J. at 20.)

While Ergonome concurs with Compaq's count of the allegedly infringed words involved, Ergonome argues that because Compaq's *de minimis* argument rests on a concept of "substantial similarity," the question inherently calls for a determination made by the trier of fact. Alternatively, Ergonome quotes its expert witness, Professor Arthur R. Miller, and argues that Compaq's copying is not *de minimis* as a matter of law. As Professor Miller observes,

In [*Harper & Row Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)], the Supreme Court found copying that was not *de minimis,* when 300 words from President Ford's memoirs were used in a 2,000–word article, which is also fifteen percent (15%). I also understand that the expression which Compaq allegedly took from those 4 pages comprises approximately 3 out of 100 pages in Ergonome's book, or three percent (3%). In *Harper & Row,* the 300 words were taken from a 200,000–word book, which constitutes fifteen-hundredths of one percent (0.15%). If fifteen-hundredths of one percent (0.15%) of the infringed work is not a *de minimis* taking of Harper & Row's book, then a three percent (3%) taking of Ergonome's book, which is 20 times as much, could not be found to be *de minimis,* as a matter of law.

(Decl. Of Arthur R. Miller at ¶ 12.) Even assuming Professor Miller's declaration to be competent summary judgment evidence in this case, the Court rejects the argument, for Professor Miller's position essentially advances a rigid calculus that determines, as a matter of law, a *de minimis* inquiry; neither Ergonome nor Professor Miller points the Court to any case law that endorses such a strict arithmetical formula. Moreover, that *Harper & Row* involved 300 to 400 words that were "verbatim quotes of the author's original language," *Harper & Row,* 471 U.S. at 548–49, 105 S.Ct. 2218, further counsels against a strict adoption of the Supreme Court's analysis to the facts of the instant case.

Rather, the Court finds the *de minimis* issue, and the question of "substantial similarity" that underlies it, to be one for the trier of fact. Compaq does not challenge copying for the purposes of the pending motions for partial summary judgment. As a result, the *de minimis* question becomes, then, "whether copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Ringgold,* 126 F.3d at 74 (citation omitted). The principle of "substantial similarity" is relevant to a *de minimis* inquiry because substantial similarity "requires that the copying is *quantitatively and qualitatively* sufficient to support the legal conclusion that infringement (actionable copying) has occurred." *Id.* (emphasis added).

The Court rejects Compaq's *de minimis* argument because Compaq primarily focuses only on the quantitative component, to the disregard of the qualitative. *See id.* Sheer numbers alone will not preclude a finding of infringement. As stated in *Nester's Map & Guide Corp. v. Hagstrom Map Co.,* 796 F.Supp. 729 (E.D.N.Y.1992), the concept of *de minimis* does not mean "that copying copyrighted material is proper so long as the copying, though significant, is done in moderation." *Id.* at 734 (citing *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2nd Cir.1936) ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate")). Nor can a plagiarist excuse the wrong by showing how much of the copied work he did not pirate. *Cf. Warner Bros., Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 242 (2nd Cir.1983) (holding that *de minimis* rule allows "literal copying of a small and usually insignificant portion of the plaintiff's work"). Rather, *de minimis* copyright infringement, properly understood, is a taking that "is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees,* 794 F.2d 432, 435 (9th Cir.1986). The *de minimis* question is thus one for the trier of fact, who must determine not only whether Compaq's alleged infringement is numerically *de minimis* but qualitatively *de minimis* as well. *See Ringgold,* 126 F.3d at 74–75; *Cy-*

*berMedia, Inc. v. Symantec Corp.,* 19 F.Supp.2d 1070, 1077 (N.D.Cal.1998) (analyzing the *de minimis* standard and holding that "even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity").

The Court additionally rejects Compaq's motion for partial summary judgment premised on the concept of "fair use." Compaq points out that the fair use doctrine "permits court to avoid rigid application of the copyright statute when ... it would stifle the very creativity which that law is designed to foster." *Iowa State Univ. Research Fund., Inc. v. American Broad. Companies,* 621 F.2d 57, 60 (2nd Cir.1980). While a fair use determination is intimately bound by the particular facts of a given case, *Harper & Row,* 471 U.S. at 539, 105 S.Ct. 2218, four non-exclusive factors inform the inquiry. Those factors are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107; *Wright v. Warner Books, Inc.,* 953 F.2d 731, 735–36 (2nd Cir.1991). In its partial summary judgment motion, Compaq argues that each of these factors favors the conclusion that Compaq's copying of *The HAND Book* and *KeyMoves* was within the bounds of fair use.

The Court disagrees, finding the matter subject to genuine issues of material fact. In particular, the Court finds the first, second, and fourth factors highly fact-intensive questions that must be answered by the factfinder. Moreover, even though Compaq argues that its distribution of its *Guides* along with each computer sold was merely instructional and not commercial, the Court notes that a work that provides a social benefit is not automatically shielded from copyright law. As the Supreme Court opined in *Harper & Row,* "to propose that fair use be imposed whenever the 'social value [of dissemination] ... outweighs any detriment to the artist,' would be to propose depriving copyright owners of their right in the property precisely when they encounter those users who could afford to pay for it." *Harper & Row,* 471 U.S. at 559, 105 S.Ct. 2218 (citations omitted). Assuming *arguendo* that no genuine issue of material fact exists as to the noncommercial character of Compaq's book distributions, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id.* With this framework in mind, the Court finds summary judgment on the fair use issue inappropriate.

The Court now turns to Ergonome's cross-motion for partial summary judgment, in which Ergonome urges the Court to hold that Compaq's 1994, 1995, and 1997 *Guides* are "substantially similar" to (and thus infringing on) *The HAND Book* and *KeyMoves* software. Recognizing that Ergonome's "substantially similarity" argument here is closely related to its argument on the *de minimis* issue, the Court declines Ergonome's request for summary judgment because genuine issues of material fact exist on the matter.

It is well established that to prevail on a copyright infringement claim, a plaintiff must show substantial similarity between the two works. *Peel & Co., Inc. v. Rug Market,* 238 F.3d 391, 395 (5th Cir.2001); *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 790 (5th Cir.1999).

"Substantial similarity" is usually determined by the "ordinary observer" test. *Durham Indus., Inc. v. Tomy, Corp.,* 630 F.2d 905, 911 (2nd Cir.1980). "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain,* 112 F.3d 814, 816 (5th Cir. 1997). Moreover, the layman "must detect piracy 'without any aid or suggestion or critical analysis by others. The reaction of the public to the matter should be spontaneous and immediate.'" *Peel & Co.,* 238 F.3d at 398 (quoting *Harold Lloyd Corp. v. Witwer,* 65 F.2d 1, 18 (9th Cir.1933)). By definition, "[t]he copying need not be of every detail so long as the copy is substantially similar to the copyrighted work." *Durham,* 630 F.2d at 912 (quoting *Comptone Co. v. Rayex Corp.,* 251 F.2d 487, 488 (2d Cir.1958)).

This is an inquiry "typically ... left to the factfinder," and summary judgment is only appropriate if the Court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression. *Peel & Co.,* 238 F.3d at 395; *see also Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1247 (11th Cir.1999) ("Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding similarity between two works.")

 In the instant case, the Court finds that a reasonable juror could fail to find substantial similarity between Ergonome's *The HAND Book* and *KeyMoves* on one hand, and Compaq's 1994, 1995, and 1997 *Guides* on the other. The Court's holding applies to both the textual and pictorial content of the expressions at is-

sue. While the relevant portions of Ergonome and Compaq's works in this case all convey the same ideas, a material fact issue exists as to whether substantial similarity is satisfied. *See Peel & Co.,* 238 F.3d at 394 ("A fact issue is material if its resolution could affect the outcome of the action."). For example, Ergonome points out that Compaq places a hyphen in the compound adjective "angled wrist" in a manner similar to that found in *The HAND Book;* however, copyright law does not say with certainty that such a similarity constitutes the substantial similarity required for actionable infringement. Also, while much of the disputed text in *The HAND Book* is presented in paragraph form, Compaq's allegedly infringing words are presented as bullet points. Even the pictures found in the parties' books, while undoubtedly similar, raise a fact issue as to whether they are similar enough to remove any doubt of Compaq's non-infringement. As the Eleventh Circuit appreciated, an inquiry such as this is inherently subjective. *Herzog,* 193 F.3d at 1247. Summary judgment for Ergonome is thus inappropriate.

## IV. CONCLUSION

For the reasons assigned above, the Court holds that Ergonome's textual and pictorial expression in *The HAND Book* and *KeyMoves* is copyrightable because it evinces the required modicum of originality for copyright protection. Whether Compaq has infringed Ergonome's copyright, however, is a question left for the trier of fact because genuine issues of fact exist as to whether Compaq's copying was *de minimis,* within the bounds of fair use, or substantially similar to Ergonome's copyrighted work.

Accordingly, the Court

**ORDERS** that Compaq's Motion for Partial Summary Judgment With Respect to the Photographs at Issue is **DENIED;**

**ORDERS** that Compaq's Motion for Partial Summary Judgment With Respect to the Words at Issue is **DENIED;** and further

**ORDERS** that Ergonome's Cross–Motion for Summary Judgment is **DENIED.**