United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2004

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 01-20861
_____

COMPAQ COMPUTER CORPORATION,

Plaintiff-Counter-Defendant-Appellee,

versus

ERGONOME INCORPORATED,

Defendant-Counter-Claimant-Appellant,

STEPHANIE L. BROWN; THOMAS W. MOWREY,

Defendants-Appellants.

_____

ERGONOME INCORPORATED; ET AL.,

Plaintiffs,

ERGONOME INCORPORATED,

Plaintiff-Appellant,

versus

COMPAQ COMPUTER CORPORATION,

Defendant-Appellee.

_____

Appeals from the United States District Court
For the Southern District of Texas

_____

Before JONES, DENNIS, and PICKERING, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case arises from Ergonome's claim that Compaq's
Safety and Comfort Guide ("SCG") unlawfully infringed on a
copyright held by Ergonome in Preventing Computer Injury: The HAND

Book ("THB"), a teaching text describing ergonomically correct hand positions for computer users and ways to avoid repetitive stress injuries. On July 11, 2001, after a seven-day trial, the jury concluded that any copying by Compaq was de minimis and constituted fair use according to 17 U.S.C. § 107. The district court subsequently held that the doctrines of laches and equitable estoppel also barred Ergonome's claim. Based on these findings, the district court awarded Compaq its attorneys' fees of $2.7 million. Additionally, the district court deemed defendant Stephanie Brown to be the alter ego of Ergonome as a sanction for repeated discovery violations throughout the litigation process.

Ergonome, Brown, and her husband Mowrey appeal on multiple grounds and argue, inter alia, that (1) the jury's verdict should be set aside, (2) the district court erred in finding that laches and equitable estoppel bar their suit, (3) the district court erred in shifting attorneys' fees to Ergonome, and (4) Brown and Mowrey are not the alter egos of Ergonome and should not be held jointly and severally liable for the attorneys' fee award.

To prevail, Ergonome would have to persuade this court that each of the four independent bases for finding in Compaq's favor (de minimis, fair use, laches, and equitable estoppel) is legally erroneous. Ergonome has not succeeded in this formidable task, and, focusing exclusively on the jury's finding of fair use, we affirm the finding of no infringement. We reach no other substantive copyright issues raised by the parties. Additionally,

2

we affirm the district court's decision to shift attorneys' fees and its discovery sanction against Brown. However, because no such sanction was imposed on Mowrey, we reverse this aspect of the judgment.

## I. BACKGROUND

In 1992, Stephanie Brown began writing THB and subsequently registered the manuscript with the U.S. Copyright Office. Brown and Mowrey formed Ergonome in 1993 to publish and market the book. Brown assigned all her rights in THB, including the copyright, to Ergonome. THB was formally published in 1994.

In 1993, Compaq decided to update a booklet entitled Creating a Comfortable Work Environment that was packaged with each Compaq computer. During the revision process, Compaq's manager of the Human Factors Group, Cynthia Purvis, referenced THB. The finished booklet, renamed the Safety and Comfort Guide, contained four illustrations and seven phrases that were similar to photographs and phrases in THB.[1] Like its predecessor, the SCG was packaged and included with every Compaq computer.

Meanwhile, Brown and Mowrey had been attempting to market THB to various computer companies, including Compaq. Mowrey initially spoke to Purvis on the telephone in March 1994 and thereafter sent Purvis a letter detailing volume discount prices

---

[1] For example, the SCG contained a hand-drawn illustration of a computer-user's hands, angled wrists, and lower arms positioned over a keyboard, with a caption below reading "Angled-Wrist Position - Incorrect." THB contained a similar photograph with a caption reading "Angled-wrist position - No."

for <u>THB</u>.  In November 1994, Brown and Mowrey attended a meeting with Compaq personnel in Houston to demonstrate <u>Key Moves</u>, a software derivative of <u>THB</u>.  During this meeting, Purvis gave Brown a pre-publication copy of the 1994 <u>SCG</u>.  According to Brown, while leafing through the <u>SCG</u>, she became aware of the similarities between the above-referenced four illustrations and seven phrases and <u>THB</u>.  She said nothing of the alleged infringement, however, choosing instead to pursue the possibility of a software license with Compaq.  Brown and Mowrey returned to Compaq again in January 1995 for another <u>Key Moves</u> demonstration.

In December 1996, Mowrey notified Purvis of Ergonome's infringement claims.  In 1997, Compaq filed suit in federal district court in Houston seeking a declaration that the <u>SCG</u> did not infringe on <u>THB</u>.  Ergonome subsequently filed an infringement action in federal district court in New York, which was transferred and consolidated with Compaq's declaratory judgment action in Houston.  Both parties filed motions for summary judgment, and the district court concluded as a matter of law that the portions of <u>THB</u> at issue were copyrightable.  However, the district court ultimately denied the motions because genuine issues of material fact remained as to Compaq's affirmative defenses of <u>de minimis</u> and fair use.  <u>See</u> <u>Compaq Computer Corp. v. Ergonome, Inc.</u>, 137 F.Supp. 2d 768 (S.D. Tex. 2001).  The jury trial and resulting appeal followed.

4

## II.  DISCUSSION

### A.  Liability

"To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and copying of constituent elements of the work that are copyrightable." Eng'q Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340 (5th Cir. 1994) (citing Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1999)).  Copyright ownership is shown by (1) proof of originality and copyrightability and (2) compliance with the applicable statutory requirements.  Id.  Compaq does not dispute that Ergonome possessed a statutorily compliant copyright.  In addition, the district court held as a matter of law that the portions of THB allegedly copied by Compaq reflected the necessary originality to qualify as copyrightable.[2] Compaq Computer Corp. v. Ergonome Inc., 137 F. Supp. 2d 768, 777 (S.D. Tex. 2001).  The jury found that Compaq actually copied portions of THB.

Not all copying amounts to copyright infringement, however.  Eng'q Dynamics, 26 F.3d at 1340-41.  Specifically, Congress has excepted from infringement of copyrighted materials copying that amounts to "fair use" under 17 U.S.C. § 107.  When determining fair use, Congress has provided a non-exclusive list of factors that must be considered:

---

[2]    Ergonome argues that the district court allowed Compaq to relitigate the question of originality and copyrightability.  However, the jury was instructed that THB was "a copyrighted work subject to the protection of the Copyright Act."  Ergonome's argument is wrong.

5

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use on the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (2000). In the instant case, Compaq pleaded fair use as an affirmative defense, the jury was instructed on the four factors enumerated above, and they ultimately concluded that Compaq's copying of the four illustrations and seven phrases from THB amounted to fair use. On appeal, Ergonome does not challenge the fair use jury instruction. Instead, the company argues that the district court erroneously excluded evidence relevant to the fair use defense and erred in refusing to grant Ergonome's motion for judgment as a matter of law as to fair use.

**1. Exclusion of Evidence**

This court reviews a district court's decision to admit or exclude evidence for abuse of discretion. Green v. Admin's of Tulane Educ. Fund, 284 F.3d 642, 660 (5th Cir. 2002). Even if an abuse of discretion is found, the harmless error doctrine applies unless a substantial right of the complaining party was affected. Id.

Ergonome contends that the district court excluded evidence relevant to the first statutory fair use factor.

6

Specifically, Ergonome complains about the exclusion of evidence relating to (1) past lawsuits against Compaq for repetitive stress injuries ("RSI"), (2) the exact number of the offending copies of the SCG distributed with Compaq computers, and (3) the proposed volume discount quoted to Compaq by Mowrey. The district court apparently premised exclusion on Federal Rule of Evidence 403, finding that "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403.

Ergonome asserts that the evidence concerning past RSI lawsuits is necessary to prove Compaq's "commercial motive" for copying from THB, that is, Compaq's desire to defray potential RSI liability. The first statutory fair use factor asks the court or jury to consider "the purpose or character of the use." While Compaq did not produce the SCG for individual sale or profit, the Supreme Court has noted that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985). Thus, the inclusion of the SCG with each Compaq computer constitutes a commercial use of the copied material.

The RSI evidence would be relevant to Ergonome's "motive" theory. However, the district court concluded that Ergonome's true reason for seeking to introduce the evidence was to paint Compaq as

7

a "bad" company.  The court did not abuse its discretion by con-

cluding that any probative value the RSI evidence might hold was

outweighed by its prejudicial and inflammatory nature and by its

tendency to confuse the jury with tangential litigation.  In any

event, the exclusion was harmless, because even without the RSI

lawsuit evidence, the jury was presented with ample evidence of

Compaq's commercial use, or "motive," relevant to the first

statutory fair use factor.

Ergonome also contests the exclusion of the number of

1994 Compaq guides distributed to customers and evidence concerning

the details of a proposed volume discount price submitted by

Mowrey.[3]  Such evidence is claimed to be relevant to Compaq's

commercial use of THB under the first statutory fair use factor.

The district court did not abuse its discretion by excluding this

evidence as cumulative or prejudicial.  See FED. R. EVID. 403.

Again, any error that may have occurred was harmless, as Compaq's

commercial use of THB was evident from the fact that a copy of

Compaq's SCG was bundled with every Compaq desktop computer sold,

and the jury was aware that Compaq sold millions of computers.  The

jury was also apprised of Ergonome's desire to sell THB to Compaq

and of the sales calls and meetings to that end.  Ergonome's

---

[3]    Ergonome asserts that 32,236,510 copies of the SCG were produced.
Additionally, Mowrey suggested a volume discount price of $7.95 per copy for
orders of THB over 100,000.

8

substantial rights were not affected by the exclusion of this evidence.

## 2. Judgment as a Matter of Law

We review a district court's ruling on a motion for judgment as a matter of law de novo. <u>Ins. Co. of N. Am. v. Aberdeen Ins. Servs., Inc.</u>, 253 F.3d 878, 884 (5th Cir. 2001). This court views the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. <u>Id.</u> Judgment as a matter of law is appropriate only when the "facts and inferences point so strongly and overwhelmingly in favor of one party that the [c]ourt believes that reasonable men could not arrive at a contrary verdict." <u>Rubinstein v. Admin's of the Tulane Educ. Fund</u>, 218 F.3d 392, 401 (5th Cir. 2000); <u>see</u> <u>also</u> FED. R. CIV. P. 50(a).

Ergonome argues sketchily that the evidence as to each of the four non-exclusive statutory fair use factors points so overwhelmingly in Ergonome's favor that the district court erred in denying its motion for judgment as a matter of law. As discussed <u>supra</u>, Compaq's use of <u>THB</u> was commercial in the sense that Compaq's <u>SCG</u> was packaged with every desktop computer. While commerciality generally weighs against finding fair use, it does not end the inquiry; rather, the fair use determination depends on the totality of the factors considered. <u>See</u> <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 584, 114 S. Ct. 1164, 1174, 127 L. Ed.

9

2d 500 (1994); Sundeman v. Seajay Soc'y, Inc., 142 F.3d 194, 203 (4th Cir. 1998).

The second statutory factor asks the factfinder to determine "the nature of the copyrighted work." The Supreme Court has noted that "fair use is more likely to be found in factual works than in fictional works." Stewart v. Abend, 495 U.S. 207, 237, 110 S. Ct. 1750, 1769, 109 L. Ed. 2d 184 (1990). Ergonome argues that because the district judge found at summary judgment that portions of THB were sufficiently original to warrant a copyrightability finding, the second factor must favor Ergonome. In order to be copyrightable, a work must contain a certain modicum of originality. Originality's relatively low hurdle may be cleared when the "selection and arrangement" of sometimes uncopyrightable facts evinces a "minimal degree of creativity." Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991). At summary judgment, the district court concluded that THB possessed the requisite amount of originality.

Ergonome's argument proves too little, however, because fair use excuses otherwise actionable infringement. Thus, a work will always be found "original" for copyrightability purposes before the fair use analysis is applied. The second statutory fair use factor, then, refers to the "nature" of the work beyond this initial inquiry. At trial, Brown herself stated that THB was a factual teaching text. Based on the evidence submitted at trial,

10

the jury could have easily concluded that THB was a factual work, as opposed to a highly creative fictional work, and that the second fair use factor favored Compaq.

The third statutory factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." The copied portions of THB at issue in this case amount to four illustrations and seven phrases. The evidence at trial revealed that THB is approximately 100 pages long and contains over 88 photographs. Based on the evidence adduced at trial, the jury could have reasonably concluded that the minimal portions of THB used in Compaq's SCG were insubstantial in relation to THB as a whole.

Finally, the Copyright Act focuses on "the effect of the use on the potential market for or value of the copyrighted work." The Supreme Court states that this factor represents the most important aspect of fair use. Harper & Row, 471 U.S. at 566, 105 S. Ct. at 2233. This factor requires courts to consider not only actual harm to the market for the original, but also whether widespread use of the work, like the sort complained of by the copyright-holder, would impair the potential market for the original work and any derivative works. Campbell, 510 U.S. at 590, 114 S. Ct. at 1177.

In this case, Ergonome could not show that the distribution of Compaq's SCG deprived Ergonome of any sales. In fact, Brown and Mowrey conceded that in June 1994, six months

11

before Compaq began distributing its SCG, they decided to cease actively marketing THB. Mowrey testified that because of the increased demand for computer software, he and Brown decided to focus on marketing Key Moves as opposed to THB. In addition, he stated that it was simply too easy for company managers to read THB and instruct employees on its techniques rather than buy numerous copies of the book. Based on this evidence, the jury could have reasonably concluded that the distribution of Compaq's SCG had little or no impact on the market for THB. Moreover, Mowrey stated that the potential market for THB was essentially thwarted by an uncontrollable market phenomenon, namely, managerial consumption and dissemination of THB techniques. The jury could also have reasonably concluded that Compaq's use of portions of THB had little or no impact on the potential market. The evidence presented at trial and the reasonable inferences therefrom, when viewed through the lens of the statutory fair use factors, support the jury's fair use finding.[4]

## B. Attorneys' Fees

The Copyright Act provides that

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

---

[4] Because we uphold the jury's fair use finding, which in turn results in a finding of no infringement, we have no occasion to address Ergonome's other claims on appeal relating to liability and damages.

17 U.S.C. § 505 (2000). As the prevailing party, Compaq requested an award of attorneys' fees. In granting Compaq's request for attorneys' fees of $2,765,026.90, the district court relied upon several factors, inter alia: (1) Ergonome continuously failed to comply with discovery orders, which resulted in monetary sanctions and holdings of contempt; (2) Ergonome filed a multitude of "non-meritorious motions;" and (3) had Ergonome prevailed on its $800 million claim for damages, its attorneys would have received a forty percent contingent fee, which represents an award 120 times greater than the amount requested by Compaq. Appellants argue that the district court's decision to award attorneys' fees to Compaq violates Supreme Court precedent and also represents an abuse of discretion. They do not, however, contest the quantum of the fee award.

Whether the district court applied an incorrect legal standard in awarding attorneys' fees is a question of law reviewed de novo. Hogan Sys., Inc. v. Cybresource Int'l, Inc., 158 F.3d 319, 325 (5th Cir. 1998). We review a district court's decision to award attorneys' fees, however, for abuse of discretion. Id.

In deciding to award attorneys' fees, the district court noted that "[t]he Fifth Circuit has acknowledged that an award of attorneys' fees in copyright cases is within the discretion of the trial court, but has held that the award of attorneys' fees in copyright cases is the rule rather than the exception, and should be awarded routinely." See Hogan, 158 F.3d at 325; McGaughey v.

13

<u>Twentieth Century Fox Film Corp.</u>, 12 F.3d 62, 65 (5th Cir. 1994). Appellants argue that the Supreme Court's decision in <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), displaced this court's "discretionary but routinely awarded" standard.[5] This argument is without merit. In <u>Hogan</u>, this court considered and rejected the identical argument advanced by Appellants here. 158 F.3d at 325. Specifically, this court held that both this circuit's rule and the <u>Fogerty</u> rule allow for district court discretion in the decision to award attorneys' fees. <u>Id.</u> The district court did not apply the incorrect legal standard.

Appellants also argue that the district court failed to apply the correct factors, as announced in <u>Fogerty</u>, when making its decision. However, the Supreme Court in <u>Fogerty</u> stated that "[t]here is no precise rule or formula for making [a fee award determination] . . . ." 510 U.S. at 534, 114 S. Ct. at 1033. The factors that Appellants point to as being determinative (frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence) were indeed referenced by the Court, but only as factors that "may be used to guide courts' discretion." <u>Id.</u> at 535 n.19, 114 S. Ct. at 1033 n. 19. This court has already considered and rejected the idea that district courts are bound to apply verbatim the factors

---

[5] In <u>Fogerty</u>, the Supreme Court rejected the argument that Section 505 adopted the British Rule of awarding costs to the prevailing party as a matter of course and instead adopted an "evenhanded" approach that relied on the district court's discretion. 510 U.S. at 533-34, 114 S. Ct. at 1033.

listed above. <u>Hogan</u>, 158 F.3d at 325-26. Additionally, the factors relied upon by the district court overlap with several of the factors advanced by Appellants, namely, motivation, objective unreasonableness, and compensation. The district court did not apply the incorrect legal standard.

Finally, we cannot say that the district court abused its discretion in awarding Compaq its attorneys' fees. The court examined both procedural and substantive aspects of the litigation in making its decision. The attorneys' fee award is affirmed.

## C. Discovery Sanction

In its order amending the final judgment, the district court, as discussed <u>supra</u>, ordered "Ergonome" to pay Compaq's attorneys' fees. The court further defined "Ergonome" as "Ergonome, Inc., Stephanie L. Brown and Thomas Mowrey," thus holding Brown and Mowrey liable for the fee award. Brown and Mowrey were included in the collective definition of "Ergonome" following the district court's finding of alter ego as a discovery sanction.[6] The sanction was made pursuant to Federal Rule of Civil Procedure 37(b), which provides that when a party fails to comply with a discovery order, the court may "order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." FED.

---

[6] A finding that Brown and Mowrey are the alter egos of Ergonome results in their personal liability for the award of attorneys' fees.

15

R. Civ. P. 37(b)(2)(A). Brown and Mowrey challenge the court's alter ego discovery sanction, which we review for abuse of discretion. Tollett v. City of Kemah, 285 F.3d 357, 363 (5th Cir. 2002).

The district court's discovery sanction finds its roots in Brown's repeated refusal to respond adequately to interrogatories aimed at proving alter ego. The dispute began in 1998, when the district court ruled that Compaq would be given an opportunity to pierce the corporate veil to provide a jurisdictional basis for joining Brown as a party to Compaq's declaratory judgment action.[7] For over two years, Brown creatively refused to provide the discovery sought by Compaq.[8] Brown filed three unsuccessful petitions for writ of mandamus to this court, one motion requesting that the district judge recuse herself, one motion requesting that the district court refer the case to the U.S. Attorney for prosecution under the Hobbs Act, and finally, a bankruptcy case in New York, which the bankruptcy judge ultimately found was filed "to

_____

[7] Personal jurisdiction may be established over a corporate officer by establishing that the individual is an alter ego of a corporation over which the district court has established personal jurisdiction. See, e.g., Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002). Because the corporation and its individual alter ego "are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the International Shoe due process analysis." Id. (emphasis in original). In this case, the district court found that it had personal jurisdiction over Ergonome, Inc., and no party disputes that finding on appeal.

[8] Compaq admits that a portion of the requested discovery was received in 1999, however, the remainder of the discovery requests went unanswered and was the subject of additional discovery orders by the district court.

16

prevent potential liability of Ms. Brown in the event Compaq prevailed in the Houston litigation."

On March 26, 2001, the district court held Ergonome, Inc., Brown, and Mowrey in contempt of court for failing to respond adequately to Compaq's discovery requests. While the court declined at that time to find that Brown was the alter ego of Ergonome as a matter of law, the court cautioned that if the discovery was not provided within thirty days, it would be "prepared to do so in light of Defendants' long history of filibuster and delay on the matter." In that same order, the court denied Brown's and Mowrey's motion for judgment on the pleadings, in which they argued the merits of the alter ego issue. The court noted that Brown and Mowrey were "ironically invoking the very doctrine on which they have been recalcitrant with regard to Compaq's discovery requests."

On July 16, 2001, five days after the trial, the district court entered a final judgment, declaring that Compaq's Safety and Comfort Guide did not infringe Ergonome's The HAND Book and ordering that Compaq recover its costs from Ergonome. In that order, the district court referred to Ergonome, Inc., Stephanie L. Brown, and Thomas Mowrey collectively as "Ergonome." Brown and Mowrey moved to alter or amend the final judgment, asserting that they should be removed from the judgment because Ergonome's corporate veil was never pierced. The district court noted that the argument was simply a "re-urging of the same points in their

17

Motion for Judgment on the Pleadings, which was denied March 26, 2001." The court further stated that, after the March 2001 order, Brown and Mowrey were given an opportunity to respond fully to the discovery requests. Additionally, the court reminded Brown of the March 2001 order warning her that any future failure to provide the requested discovery would result in a finding that she was the alter ego of Ergonome. Ultimately, the court granted Compaq's request and, as a sanction, held Brown to be the alter ego of Ergonome, Inc.

The Supreme Court has noted that rule 37(b)(2) "contains two standards — one general and one specific — that limit a district court's discretion." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707, 102 S. Ct. 2099, 2107, 72 L. Ed. 2d 492 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Id. Based on the facts and circumstances surrounding the district court's decision, we conclude that the sanction was "just." Compaq struggled for well over two years to obtain sufficient alter ego discovery from Brown and Ergonome.[9] Brown and Ergonome engaged in abusive practices for the sole purpose of

---

[9] Brown argues that her responses to Compaq's interrogatories were sufficient. However, although the supplemental answers filed on April 30, 2001, contain certain additional information not present in the earlier versions, those portions dealing with the relationship among Brown, Mowrey and Ergonome consist largely of rhetoric aimed at inflaming the opposing party. The district court did not abuse its discretion in concluding that the responses did not satisfy the March 2001 order.

18

frustrating Compaq's ability to extract the discovery. The district court was not alone in its assessment of the delaying tactics. In denying Ergonome's third petition for writ of mandamus, this court warned that "[t]he mandamus petition is arguably frivolous and would entitle the opposing party to attorneys' fees." Additionally, the bankruptcy court found that Ergonome's suggestion of bankruptcy was filed solely to avoid potential liability in the Compaq litigation. The entire egregious course of overlitigation and discovery abuse is among the worst we have seen.[10]

Second, the court's decision to deem Brown the alter ego of Ergonome was "specifically related to the particular 'claim' which was at issue in the order to provide discovery." Id. at 707, 102 S. Ct. at 2107. The purpose of the discovery, from its very inception, was to discover facts that would support a finding of alter ego. This finding, in turn, would result in piercing Ergonome's corporate veil. The district court's sanction of deeming Brown to be the alter ego of Ergonome corresponded to the "claim" at issue in Compaq's repeated discovery requests.[11] The

_____

[10]    It need hardly be added that the court warned Brown that failure to comply with the discovery order would result in a sanction of the type ultimately imposed. See id. at 707-08, 102 S. Ct. at 2106-07 (relying on similar factors to conclude that the sanction was "just").

[11]    Brown argues that the district court failed to recognize the difference between alter ego for jurisdictional purposes and alter ego for liability purposes; she argues that because the discovery sought related only to personal jurisdiction, the district court's sanction affecting her personal liability amounted to an abuse of discretion.
        Although it is true that Compaq originally sought the alter ego discovery to establish personal jurisdiction over Brown, the record supports the conclusion that by January of 2000, at the very latest, Ergonome was aware of Compaq's desire to prove alter ego for the purpose of collecting attorneys' fees

19

result of this sanction — personal liability for attorneys' fees — flows directly from the finding of alter ego. See id. at 709, 102 S. Ct. at 2108 ("That a particular legal consequence . . . follows from [the discovery sanction], does not in any way affect the appropriateness of the sanction."). As a result, we cannot say that the district court abused its discretion in deeming Brown to be the alter ego of Ergonome and that portion of the order is affirmed.

The district court's order, however, plainly fails to levy the same sanction against Mowrey. The order states: "As a sanction the Court will declare Brown to be the alter ego of Ergonome, Inc., and will deny the motion to alter or amend the final judgment." Thus, there is no legal basis for holding Mowrey to be the alter ego of Ergonome, Inc., and no corresponding basis for holding him personally liable for the attorneys' fees in question. Accordingly, we reverse that portion of the district court's order holding Mowrey personally liable for the attorneys' fee award.

### III.  CONCLUSION

For the reasons discussed above, the judgment in favor of Compaq is AFFIRMED, except insofar as the judgment holds Thomas

---

from Brown and Mowrey individually. Additionally, Compaq moved to amend its complaint on June 1, 2000, and specifically added an alter ego liability claim. This motion was unopposed. Finally, the district court warned Brown in March of 2001 that failing to comply with the discovery order would result in a finding of alter ego. Brown's protestations are unconvincing.

Mowrey personally liable for the attorneys' fee award.  The judgment against Mowrey is REVERSED.

**AFFIRMED IN PART; REVERSED IN PART**.

PICKERING, SR., CHARLES W., Circuit Judge, specially concurring.


I concur in the result but write separately because the attorney's fee sanction against defendant Brown has given me considerable pause and concern.  The district court's finding alter ego *as a sanction* had the effect of imposing a $2.8 million attorney's fee on the individual defendant Brown.  Our case law is very clear that we should not dismiss a cause of action as a sanction unless all other lesser sanctions have been considered and found ineffective.  *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996) ("A dismissal without prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumaciousness and the record reflects that the district court employed lesser sanctions before dismissing the action."). That same rationale should be applicable in this case.  Dismissing a complaint puts a plaintiff out of court without trial, and finding alter ego as a sanction, in this case imposed liability on a defendant without trial.  One is the death sentence to a plaintiff.  The other is the death sentence to a defendant.

The Ergonome defendants strenuously argue that plaintiffs were seeking alter ego discovery only for the purpose of jurisdiction and not for the purpose of liability.  However, the record clearly reflects that at least eighteen months before the sanction was imposed, Compaq made it clear to the Ergonome defendants that it

was seeking alter ego liability as to Brown for attorney's fees. Despite their argument to the contrary, the Ergonome defendants were on notice well before the sanction was imposed that Compaq was trying to obtain an award of attorney's fees against the individual defendant Brown on the basis of alter ego.

A sanction of this magnitude is a serious consequence and should not be imposed lightly. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) ("sanctions . . . should not be assessed lightly or without a fair notice and an opportunity for a hearing on the record."). I write separately to emphasize the egregiousness of the litigation strategy of the Ergonome defendants, absent which I would not concur in this sanction.

The Ergonome defendants' litigation strategy can only be described as fitting the prototype of a trial strategy of extortion by unreasonably aggressive and obstructive litigation practices. In other words, they attempted to make the litigation so unpleasant and so costly that the defendants would be forced to settle.

On at least seven different occasions the trial court ordered Ergonome and Brown to comply with alter ego discovery. Additionally, the court ordered the Ergonome defendants to comply with these discovery requests within thirty days or face a $1,000 per day fine. Ergonome responded by filing a frivolous bankruptcy petition which was dismissed by the bankruptcy court on the ground that Brown was seeking to avoid the consequences of having

23

attorney's fees assessed against her in this action.  The trial court then levied a $34,000 sanction against Brown and her attorneys for failing to comply with discovery orders.  Eventually the court advised Ergonome and Brown that if they did not comply with the alter ego discovery requests within thirty days, alter ego would be admitted as a discovery sanction.  Yet in face of all of this, Ergonome and Brown only provided cursory answers.  As a last resort, the trial court imposed the sanction of taking alter ego as having been established, the issue as to which Ergonome had stonewalled Compaq by failing to provide adequate discovery.

Additionally, Ergonome and Brown filed three meritless petitions for writs of mandamus to the Fifth Circuit in this litigation.  A writ of mandamus is an extraordinary remedy that is rarely granted.  *See In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).  After the third writ of mandamus, the Fifth Circuit warned Ergonome and Brown that the petition was arguably frivolous and could entitle Compaq to attorney's fees.  Besides filing for three writs of mandamus, Ergonome employed another unusual tactic by filing a motion for interlocutory appeal to the Fifth Circuit which was denied.

But that is not all.  Ergonome filed a 60-page memorandum asking the trial judge to recuse herself on a relatively straightforward and tenuous basis. When the trial court refused to recuse herself, Ergonome followed up with a frivolous 39-page

24

motion to reconsider the denial of the motion to recuse.  Ergonome also filed a 63-page request, based on a farfetched theory, that plaintiffs be referred for prosecution.  The trial court refused to do so.  Ergonome made a demand for $800 million in their complaint.  Based on the record in this case, such a demand was preposterous.  The trial strategy of the Ergonome defendants was clearly vexatious and oppressive.

The trial court found that there was "an incredible amount of gamesmanship" by Ergonome and Brown and that they had "not acted in good faith."  Since lesser sanctions did not get the defendants' attention and did not result in an appropriate response to discovery, and in view of the oppressive and obstructive litigation strategy of the defendants, the sanction imposed by the trial court was appropriate.