PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM DARDEN,
          *Plaintiff-Appellant,*

v.

MARYBETH PETERS, Register of
Copyrights,
          *Defendant-Appellee.*

No. 06-1177

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(2:04-cv-00030-BO)

Argued: February 1, 2007

Decided: May 24, 2007

Before WIDENER, TRAXLER, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Widener and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** Anthony J. Biller, COATS & BENNETT, P.L.L.C., Cary,
North Carolina, for Appellant. John J. Fargo, Director, Intellectual
Property Staff, Civil Division, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David
E. Bennett, COATS & BENNETT, P.L.L.C., Cary, North Carolina,
for Appellant. David Carson, General Counsel, Tanya Sandros, Asso-

ciate General Counsel, A. Renee Coe, Senior Attorney, UNITED STATES COPYRIGHT OFFICE, Washington, D.C.; Peter D. Keisler, Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

William Darden filed this action under the Administrative Procedure Act against Marybeth Peters, Register of Copyrights, seeking to set aside a decision of the United States Copyright Office denying Darden's applications for copyright registration. *See* 5 U.S.C. § 706(2)(A); 17 U.S.C. § 701(e). Finding no abuse of discretion in the Register's refusal to issue a copyright registration for Darden's works, we affirm the district court's grant of summary judgment to the Register.

I.

Darden created a website called "appraisers.com," an online referral service for consumers to locate real estate appraisers throughout the United States. The website features a series of maps that enable a user to find an appraiser in a desired location by pointing to and clicking on the appropriate map. The homepage of appraisers.com features a stylized map of the United States that serves as a link to a separate page displaying a detailed map of any state selected by the user. The state maps, in turn, are divided into counties; the consumer can retrieve a list of local appraisers by selecting the appropriate county.

In developing his website, Darden hired Sean Pecor, a web designer, to create the maps. Pecor started with a digital Census map of the United States, colored the map blue, and added shading to give the map a three-dimensional effect. Pecor selected a font to use in labeling the states, and he added call-out labels as well. Pecor used the same process for the individual maps of each state. After completing the project, Pecor assigned Darden any copyright interest he held in the maps and the design of the website.

In May 2002, Darden filed an application with the Copyright Office seeking to register his *website*, which he titled "APPRAISERS dotCOM" for purposes of the application, as a technical drawing. Darden described APPRAISERSdotCOM as a derivative work based on "US Census black and white outline maps" and "clip art." J.A. 125. Darden's application identified "graphics, text, colors, and arrangement" as the material that he added to the preexisting work and in which he claimed copyright protection. J.A. 125. Additionally, Darden filed a separate application for registration of the work "Maps for APPRAISERSdotCOM." J.A. 286. Darden described his "Maps" work as a derivative work that, similar to the "APPRAISERSdot COM" work, was based on preexisting "US Census black and white outline maps." J.A. 287. He claimed copyright ownership in the additions made by Pecor to the preexisting census maps: "font and color selection; visual effects such as relief, shadowing, and shading; labeling; call-outs." J.A. 287.

The Examining Division of the Copyright Office rejected both applications. With respect to Darden's claim in the Maps themselves, the examiner concluded that the work "lack[ed] the authorship necessary to support a copyright claim." J.A. 119. The examiner explained that "[i]n order to be copyrightable, a work of the visual arts must contain a minimum amount of pictorial, graphic, or sculptural authorship" and that "[c]opyright does not protect familiar shapes, symbols, and designs . . . [or] mere variations of typographic ornamentation, lettering, fonts, or coloring." J.A. 119. The labeling, relief, shadowing and shading that Darden contributed to the preexisting maps, the examiner concluded, are standard elements that do not contain copyrightable authorship.

As for Darden's application to register his APPRAISERSdotCOM web pages as a technical drawing, the examiner first noted that the work "does not appear to contain any technical drawing." J.A. 120. Regarding Darden's claim for "graphics," the examiner determined that "[a]ll of the graphic elements appear to consist only of the preexisting outline maps and some simple colored rectangles" and thus the added material was not sufficiently original to warrant copyright protection. J.A. 120. Darden's variations in color were rejected on the same basis. The examiner observed, however, that "[t]he work contains text and perhaps a compilation which can support a copyright

claim, if they are original" and indicated that Darden could pursue registration of an original compilation by filing a new or amended application that "omitt[ed] any reference to 'technical drawing,' 'graphics,' or 'colors.'" J.A. 120.

Darden sought reconsideration by the Examining Division of the Copyright Office. With respect to his application for registration of the Maps work, Darden argued that the maps had a sufficient level of creativity to warrant copyright protection because of "the special combination of font and color selection; visual effects such as relief, shadowing, and shading; labeling; and call-outs. The information the maps convey could easily be provided in other ways; thus, the author should be allowed to protect his creative efforts." J.A. 100. In support of his request for reconsideration, Darden submitted a written "declaration" from Sean Pecor who asserted that, even though he used pre-existing census maps as the basis of his work, "each map was altered to such a degree that each line on each map is measurably changed from the digital originals . . . obtained from the US Census." J.A. 116. Specifically, Pecor "resized the maps and redrew many of the anti-aliased lines" so that "during scale down of [the maps], [the images would not] get a 'chunky' look." J.A. 116.[1] Pecor claims he also "created a three-dimensional effect by repeating each outline several times — one bright blue outline slightly askew, one darker outline slightly askew, etc." J.A. 116.

Darden submitted an amended application for registration of the APPRAISERSdotCOM work. The revised application indicated that the nature of authorship was a "compilation and arrangement of maps, text, graphics, and data" as opposed to a technical drawing as indicated in the original application. J.A. 107. Darden described the new material in which he claimed copyright as "[t]ext; map designs and formats; compilation, formating, and arrangement of text, maps, graphics, and listing data." J.A. 108. Darden made clear that he was asserting no claim in "the content of the listing data." J.A. 108.

The Examining Division denied Darden's request for reconsidera-

---

[1]According to Pecor, "[a]n anti-aliased line is a line digitally softened by a graphic program to render a line more smoothly." J.A. 116.

tion and registration of his copyright claims. The examining attorney explained that

> [i]n the case of a derivative work, copyright protection covers only the additions or changes appearing in the work for the first time . . . mean[ing] that the new material must contain a sufficient amount of original and creative authorship to be copyrightable. Copyright does not extend to any preexisting or previously registered material. . . . [W]here the new material consists solely of the uncopyrightable elements such as a change of layout, format, size, spacing or coloring, registration is not possible.

J.A. 94. The examiner concluded that the changes made to Darden's maps work "amount[ed] primarily to layout and format as well as de minimis compilation" and therefore lacked "a sufficient amount of originality and creativity to support a copyright registration." J.A. 97-98. With respect to the APPRAISERSdotCOM work, the examiner again suggested the possibility of a registrable claim "in only the 'text and compilation of data'" but indicated that a new application, revised to limit the claim to "'text and compilation of data,'" was required. J.A. 98.

Darden then sought review of the denial of his applications by the Copyright Office Board of Appeals. Darden's argument was essentially identical to that asserted in his request for reconsideration:

> Mr. Darden is not seeking a copyright on one particular design element of the maps in question, nor is he asking for protection of "simple combinations" of elements such as "familiar shapes, symbols, and designs; mere variations of typographic ornamentation, lettering, fonts or coloring." Mr. Darden requests protection for the overall pictorial expressions of his maps.
>
> Mr. Darden's overall design, his special combination of font and color selection, selection and arrangement of geographic locations such as counties, visual effects such as relief, shadowing, and shading, labeling, and call-outs pro-

vide the "creative spark" that make[s] the maps original and eligible for protection.

J.A. 87. Darden also presented his own declaration in which he stated that he had "received calls from people and companies asking whether I would license our maps for them to use on their web sites . . . [demonstrating that] people recognize the maps as being unique and proprietary to us." J.A. 92.

The Board of Appeals again affirmed the denial of registration for both the Maps and the APPRAISERSdotCOM works. With regard to the copyright claim in the maps themselves, the Board concluded, as did the Examining Division, that the maps were merely "representations of the preexisting census maps in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." J.A. 74 (internal quotation marks omitted). The Board also noted that any marketplace confusion created by the use of Darden's maps by third parties was irrelevant to the question of whether the maps were copyrightable, as were requests to Darden by website browsers for license to use the maps. As for the APPRAISERSdotCOM application, the Board of Appeals affirmed the denial of registration "due to the expansive scope of the claim." J.A. 76. Although the Board of Appeals endorsed the notion that there could well be copyrightable elements included on the website, Darden's claim as stated in his registration application — for "text, maps, and formatting of an Internet web page" — was simply "too broad" to warrant protection. J.A. 76.

Darden then brought this action against the Register of Copyrights under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. §§ 701-706, seeking judicial review of the decision of the Copyright Office refusing to register his copyright claim. Rejecting Darden's argument that the decision of the Copyright Office is subject to a *de novo* standard of review, the district court concluded that the Copyright Office did not abuse its discretion in refusing registration, *see* 5 U.S.C. § 706(2)(A), and granted the Register's motion for summary judgment.

II.

The Copyright Act provides that "all actions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act." 17 U.S.C. § 701(e).[2] One routine function of the Register is to examine applications for registration to determine if "the material deposited constitutes copyrightable subject matter and . . . the other legal and formal requirements of [the Copyright Act] have been met." 17 U.S.C. § 410(a). If so, then the Register must issue a certificate of registration to the applicant, *see* 17 U.S.C. § 410(a); if, however, the Register determines that "the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason," then the Register must refuse registration and notify the applicant of the reasons for refusal, 17 U.S.C. § 410(b). Because the Register's denial of a copyright registration application is, by the statute's plain terms, an action taken by the Register under the Copyright Act, the APA governs judicial review. *See* 17 U.S.C. § 701(e); *Atari Games Corp. v. Oman*, 888 F.2d 878, 879 & n.1 (D.C. Cir. 1989) ("*Atari I*"); *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1182 (9th Cir. 1983).

The district court concluded that the proper standard of review under the APA is the familiar "abuse of discretion" standard whereby a reviewing court will "set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is consistent with the few federal decisions — most of which were issued by the same court — addressing the proper review standard under the APA for courts directly reviewing a registration decision. *See Atari Games Corp. v. Oman*, 979 F.2d 242, 243 (D.C. Cir. 1992) ("*Atari II*"); *OddzOn Prods., Inc. v. Oman*, 924 F.2d 346, 347-48 (D.C. Cir. 1991); *Atari I*, 888 F.2d at 881; *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 497 (S.D.N.Y. 2005). *See generally* 3 Melville B.

---

[2]The Copyright Act excepts the Register's performance of a single function from APA review: authorization of, or refusal to authorize, copies or reproductions of "deposited articles retained under the control of the Copyright Office." 17 U.S.C. § 706(b); *see* 17 U.S.C. § 701(e). This narrow exception is not at issue here.

Nimmer & David Nimmer, *Nimmer on Copyright* § 12.11[B][3], at 12-208 (2005).

Darden does not contest the general applicability of the APA to his claim; indeed, he expressly brought this action under the APA. Darden contends, however, that the district court incorrectly applied the abuse of discretion standard set forth in section 706(2)(A) of the APA. Darden suggests instead that section 706(2)(B) applies to a challenge of the Register's denial of a copyright registration application and mandates a *de novo* standard of review. Section 706(2)(B) directs that the reviewing court set aside agency actions the court finds to be "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Under the APA, constitutional questions that arise during APA review fall expressly within the domain of the courts. *See* 5 U.S.C. § 706 (requiring that "[t]o the extent necessary to decision and when presented, the reviewing court *shall . . .* interpret constitutional and statutory provisions") (emphasis added). Thus, judicial review of a claim that the agency's actions violated a claimant's constitutional rights is conducted *de novo*. *See Western Energy Co. v. United States Dep't of Interior*, 932 F.2d 807, 809 (9th Cir. 1991).

Darden cites no authority even remotely suggesting that any court has ever regarded the agency's routine decision to deny registration as having constitutional ramifications for the claimant. Darden derives the basis for his argument from Article I of the United States Constitution which grants Congress the power to provide copyright protection to the extent Congress sees fit. *See* U.S. Const. Art. I, § 8, cl. 8 (granting Congress legislative power "[t]o promote the Progress of Science and useful Arts, by securing . . . to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"). Congress is under no mandate from this clause, however, to provide copyright protection. *See Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) ("As is clear from its text, that clause of the Constitution grants no substantive protections to authors. Rather, Congress is empowered to provide copyright protection."). Copyright is solely a creature of statute; whatever rights and remedies exist do so only because Congress provided them. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984). Thus, as there is no constitutional right to copyright registration, the Regis-

ter's refusal to register Darden's claim cannot be "contrary to constitutional right" as it must be for section 706(2)(B) to apply.

Darden next contends that because the Register's decision was based on the agency's incorrect resolution of a legal question, *i.e.*, whether Darden's claim lacked sufficient originality to be registrable, the Register's decision is subject to *de novo* review. More particularly, Darden argues that the Register's refusal to find sufficient originality in his submitted works despite the "extremely low" amount of creativity required for a work to be copyrightable, *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991), was an erroneous conclusion that must be set aside under the "not in accordance with law" provision of section 706(2)(A) of the APA. Additionally, Darden cites various decisions noting, in the context of copyright *infringement* litigation, "that copyrightability is always an issue of law" for the court. *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004); *see Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 n.5 (1st Cir. 2001); *Collezione Europa U.S.A. v. Hillsdale House*, 243 F.Supp.2d 444, 452 (M.D.N.C. 2003).

We reject Darden's argument. Essentially, Darden is claiming that the Register simply reached the wrong result, not that the Register applied the wrong legal standard or misapprehended or ignored the controlling legal principles. *See Turgeau v. Administrative Review Bd.*, 446 F.3d 1052, 1057 (10th Cir. 2006) (explaining that under § 706(2)(A) "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal") (internal quotation marks omitted). Review under section 706(2)(A) is "narrow" and the reviewing court is not permitted to substitute its own judgment for the judgment of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the court is to determine "whether the decision was based on a consideration of the relevant factors," *West Virginia v. Thompson*, 475 F.3d 204, 212 (4th Cir. 2007) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)), or whether "the agency has relied on factors which Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs.*, 463 U.S. at 43; *see Thompson*, 475 F.3d at 212.

Darden makes no assertion of this kind here; he merely argues that the agency should have concluded that the Maps and APPRAISERS dotCOM works contained the requisite level of creativity, citing *Feist* and other precedents. At every level of internal agency review, however, the Copyright Office recognized *Feist* as having established the contours of the originality element of a copyright claim. Because Darden has failed to identify any relevant factor or legal principle that the Register failed to consider, the agency's decision cannot be set aside as "contrary to law."

Finally, Darden argues that the Register's determination that a copyright claim lacked sufficient originality to warrant registration is subject to *de novo* review in the context of an infringement action under section 411(a) of the Copyright Act. He contends that *de novo* review of the copyrightability issue should also apply in the context of APA review for the sake of efficiency and predictability. We cannot agree.

Congress has afforded disappointed copyright applicants two separate methods of seeking redress for the decision of the Copyright Office not to register a copyright claim. First, as we explained previously, the applicant may file a review action under the APA against the Register of Copyrights for the sole purpose of having the denial of registration set aside. *See* 17 U.S.C. §§ 410(a), 701(e). Darden's action, of course, is such a case. Second, the claimant may seek judicial review of the rejected registration as part of an infringement action against an alleged infringer under section 411(a) of the Copyright Act.[3]

Both kinds of actions involve, to one degree or another, consideration of whether a copyrightable claim has been presented. The Register has a statutory duty to examine applications for registration to

---

[3]Registration is a prerequisite for a copyright infringement action. *See* 17 U.S.C. § 411(a). However, if "the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice . . . is served on the Register of Copyrights" who "may, at his or her option, become a party to the action with respect to . . . registrability of the copyright claim." *Id.*

determine if "the material deposited constitutes copyrightable subject matter and . . . the other legal and formal requirements of [the Copyright Act] have been met." 17 U.S.C. § 410(a). Whether the Register issues the certificate of registration or not, the Register necessarily makes a determination about the validity of the copyright claim. And, with respect to a copyright infringement action, the plaintiff must establish "ownership of a valid copyright and copying of constituent elements of the work that are copyrightable." *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 404, 407 (5th Cir. 2004) (internal quotation marks omitted). Copyright ownership, in turn, requires "proof of originality and copyrightability." *Id.* at 408; *see Fiest*, 499 U.S. at 361.

Darden's argument notwithstanding, it is not a foregone conclusion that courts owe no deference whatsoever to the Register's decision in the context of an infringement action under section 411(a). Indeed, courts are split on this issue. *Compare John Muller & Co. v. New York Arrows Soccer Team*, 802 F.2d 989, 990 (8th Cir. 1986) (applying abuse of discretion standard to infringement claim); *Norris Indus. v. IT&T Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (same), *with Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985) (according no deference to Register's copyrightability conclusion); *OddzOn Prods.*, 924 F.2d at 347-50 (same). We need not weigh in on this issue, however, as Darden brought this action against the Register under the APA seeking review of the denial of registration for insufficient originality in his works. Even if no deference is due to the Register's decision by courts adjudicating infringement actions under section 411(a), we must apply the standards set forth in the APA. To do otherwise would be to ignore the clear and unambiguous language of the statute, which we cannot do. Accordingly, we review the decision to register Darden's works for abuse of discretion.

### III.

Darden next contends that even if the Register's decision is reviewed under a discretionary standard, it must be set aside because his Maps and APPRAISERSdotCOM works met the minimum standard of originality required for a copyrightable claim. Again, we disagree.

The Copyright Act affords copyright protection for "original works of authorship fixed in any tangible medium of expression," including "pictoral, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). A work must be original to be copyrightable; indeed, the "*sine qua non* of copyright is originality." *Feist*, 499 U.S. at 345. To be "original," the work in question must have been "independently created by the author (as opposed to copied from other works)," and it must "possess[ ] at least some minimal degree of creativity." *Id.* The threshold level of creativity required for copyrightability is low such that the "vast majority of works make the grade quite easily, as they possess some creative spark." *Id.* Nevertheless, "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359. The Copyright Office established a regulation providing examples of the types of works that fall into the category of works that lack a minimum level of creativity and do not qualify for copyright protection, including "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents." 37 C.F.R. § 202.1(a).

The originality requirement applies to derivative works as well. *See* 17 U.S.C. § 101 (defining derivative work as a work "based upon one or more preexisting works"). The author's copyright protection in a "derivative work only extends to the elements that he has added to the work." *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 563 (3d Cir. 2002). And, the author's contributions must satisfy the originality requirement. *See Feist*, 499 U.S. at 359.

A.

We first consider the refusal of the Copyright Office to register Darden's Maps work. In each of the three letters denying registration, the Copyright Office explained that the changes and additions Darden made to the standard census maps in his Maps work claim were uncopyrightable elements that were insufficiently original or creative to be copyrightable. *See Satava v. Lowry*, 323 F.3d 805, 812 n.5 (9th Cir. 2003) (noting that "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law"). Additions to the preexisting maps such as

color, shading, and labels using standard fonts and shapes fall within the narrow category of works that lack even a minimum level of creativity; indeed, Darden's contributions to the preexisting maps resemble the list of examples of uncopyrightable works set forth in 37 C.F.R. § 202.1(a).

Darden points out that courts have recognized that maps have "have an inherent pictorial or photographic nature that merits copyright protection." *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 142 (5th Cir. 1992); *see Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir. 1998). The general proposition that maps are categorically eligible for copyright registration, however, does not establish that the maps at issue here are copyrightable.[4]

Darden also argues that the Copyright Office abused its discretion by failing to credit evidence showing that real estate appraisers, other real estate companies, and Darden's customers associate these particular maps with Darden's company. For example, Darden has "received phone calls from people and companies asking whether [he] would license [the] maps for them to use." J.A. 92. And, Darden's customers have reported confusion after encountering a competitor's website that had downloaded Darden's maps. Recognizing the maps, the customers believed that Darden operated the competitor's website. Darden asserts that this evidence of association demonstrates that the maps were unique, creative and original.

We disagree. Source identification is the hallmark of trademark law, not copyright. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992). Furthermore, a work is copyrightable at the time of its creation or not at all. Evidence that customers associated

---

[4]The decisions Darden relies upon do not assist him. For instance, *Streetwise Maps* discusses the pictorial elements used, such as color, in the context of an infringement claim — not an examination of copyrightability for purposes of registration. *See Streetwise Maps*, 159 F.3d at 746-48. *Mason*, unlike this case, involved the addition of more than simple colors and labels to a preexisting map. Mason, for example, depicted "the location, size, and shape of surveys, land grants, tracts, and various topographical features" on a county map produced by the United States Geological Survey." *Mason*, 967 F.2d at 136.

the work with Darden is an indication of commercial success over time, not originality. *See Paul Morelli Design, Inc. v. Tiffany & Co.*, 200 F. Supp. 2d 482, 487-89 (E.D. Pa. 2002).

We conclude that the Register properly refused to register Darden's Maps work. Because there was no abuse of discretion, we decline to set aside the decision of the Copyright Office.

## B.

With respect to the APPRAISERSdotCOM work, Darden argues that the Register should have granted his application to copyright his website as a compilation. The Copyright Act defines a compilation as a "work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. *Feist* instructs that, where a copyright is sought in a compilation, "the principal focus should be on whether the selection, coordination, and arrangement are sufficiently original to merit protection." 499 U.S. at 358.

Darden's revised application indicated that he was claiming protection in the website's "text; map designs and formats; compilation, formatting, and arrangement of text, maps, graphics, and listing data." J.A. 108. In rejecting Darden's claim, the Copyright Office noted that a website may well contain copyrightable elements, but its formatting and layout is not registrable. Compilation authorship is limited to the *original* selection, coordination and arrangement of the elements or data contained within a work. *See Satava*, 323 F.3d at 812.

We conclude that the Copyright Office acted well within its discretion in concluding that Darden failed to present a copyrightable compilation.

## IV.

For the foregoing reasons, we conclude that the Copyright Office did not abuse its discretion in rejecting Darden's application for registration of his Maps and APPRAISERSdotCOM works. Accordingly,

we affirm the order of the district court granting the Register's motion for summary judgment and denying Darden's cross-motion for summary judgment.

*AFFIRMED*